**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GRACE LAWRENCE<br><br>                      Plaintiff,<br>   v.<br><br>TRANS UNION LLC<br>CITY OF PHILADELPHIA<br>                Defendant. | C.A. NO: 02-CV-4440 |

**TRANS UNION LLC'S MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Trans Union LLC ("Trans Union"), by and through its undersigned attorneys, states as follows in support of its motion for summary judgment:

**I.     INTRODUCTION**

Plaintiff claims that Trans Union inaccurately reported and failed to properly reinvestigate a judgment which was reported in her file. Plaintiff's claims arise largely from her distress over the alleged denial of a student loan for her daughter in 1997. That claim is entirely irrelevant and time barred under the FCRA's two year limitations of actions provision. FCRA §1681p.

Plaintiff's only other assertion of harm is the alleged denial of a credit card in 2001. However, plaintiff already had various credit cards, including a Chase card with $10,500.00 in available credit (and a zero balance). The application and alleged denial were non-events; Plaintiff could not even testify to the terms of the second Chase card she sought or why she needed the card. Further, Plaintiff had no explanation why she did not contact Trans Union between 1998 and 2001, even though she knew the judgment remained in her file.

Trans Union maintains reasonable procedures to maintain the accuracy of information reported about consumers, including plaintiff. Since before 1994, Trans Union has used Superior Information Services, a reputable and reliable public record vendor in New Jersey, to compile and furnish judgments and liens. Trans Union audits Superior and conducts weekly tests of the information Superior furnishes to confirm its accuracy. Superior has been a reliable source of accurate public record information. Under the contract between Superior and Trans Union, Trans Union requires Superior to meet certain processing requirements when furnishing and reinvestigating public record information. In fact, Superior is required to physically go to the relevant courthouse to verify disputed information.

Plaintiff's claims related to the judgment, if any, arose in 1997 and have been time-barred since 1999. Her effort to revive her claims in 2001 fail because no harm resulted from the reporting or reinvestigation of the disputed judgment at that time.

A.    **Plaintiff's Complaint.**

Plaintiff commenced this action on July 3, 2002 against Trans Union, a "consumer reporting agency" as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* (the "FCRA") and the City of Philadelphia. This action relates to Trans Union's reporting and reinvestigation of a single item of information, a judgment filed in the Philadelphia Municipal Court. Complaint ¶8.

Plaintiff alleges that Trans Union reported a judgment "that [does] not belong to the Plaintiff, or which misrepresent [sic] the payment history and/or status of accounts and/or tradelines that do not belong to the Plaintiff…" Complaint ¶¶8-9. Plaintiff also alleges she disputed this information to Trans Union on several occasions, including February 2001, and that Trans Union nevertheless continued to report that information. Complaint ¶¶11-15.

2

Plaintiff alleges that Trans Union willfully and negligently violated the FCRA. Complaint Count One.  In particular, Plaintiff alleges that Trans Union violated FCRA §1681i (the duty to reinvestigate disputes) and FCRA §1681e(b) (the duty to follow reasonable procedures to assure maximum possible accuracy).  Complaint, Count One.  Plaintiff also alleges a state law defamation claim against Trans Union.  Complaint, Count Three.  Plaintiff alleges Trans Union violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 *et seq.* (the "PA CPL") Complaint, Count Five.  Plaintiff also alleges common law negligence and invasion of privacy/false light.  Complaint, Counts Six and Eight, respectively.

Plaintiff dismissed the City of Philadelphia with prejudice on April 9, 2003.

### B.    Plaintiff's Allegations of Harm.

Plaintiff asserts claims for "actual, statutory, and punitive damages" for violations of the FCRA.  Plaintiff's Pretrial, p.1.  She claims "dignitary [sic] harm" as a result of "great humiliation and embarrassment from falsely being identified for a period of six years as an individual with an unpaid judgment on her record."  Plaintiff's Pretrial, p.3.  Plaintiff connects her damages to a denial of a student loan with Sallie Mae in 1997, a denial of a credit card with Chase in 2001, and higher interest rates on unidentified mortgages, car loans and credit cards. Plaintiff's Pretrial, p.3.  However, Plaintiff has only identified "evidence" to support one credit denial which is not barred by the two-year statute of limitations, a credit card application to Chase in July 2001.

Interestingly, even the Chase credit card was not denied.  Plaintiff ***withdrew*** the application prior to the date that notice of the denial was even sent.  *See* Exhibit "A," excerpt

from Chase computer records, p.1 "**Decision: Withdrawn**" (emphasis in original).[1]

Nevertheless, Plaintiff's testimony on the subject makes clear that, despite Plaintiff's conclusory

allegations to the contrary, the Chase application was a non-event:

> 2 Q.    When you said that you had an
> 3 embarrassing episode with Chase Bank,
> 4 explain to me did you go and apply in
> 5 person for Chase Bank?
> 6 A.    No.
> 7 Q.    What were you applying for with
> 8 Chase Bank?
> 9 A.    Credit card.
> 10 Q.    Okay. What kind of credit card?
> 11 A.    Visa, Master Card.
> 12 Q.    Do you remember what the terms
> 13 were on that?
> 14 A.    No. I believe they were pretty
> 15 high, though.
> 16 Q.    Were you applying for a
> 17 promotional interest rate?
> 18 A.    You know what, I don't know.
> 19 Honestly I don't know.

Deposition of Plaintiff, pp.57-58, attached hereto as Exhibit "B" (herein "Plaintiff Dep. ¶_"). In

addition, Plaintiff had at least $5,000 on a Universal credit card (Plaintiff Dep. p.28); a line of

credit with First Union Bank (Plaintiff Dep. p.32), $4,400 in available credit on a card with

Peoples Bank (Plaintiff Dep., p.95). Most importantly, Plaintiff had an existing Chase credit

card with *$10,500* in available credit. Exhibit "A," p.11. Plaintiff identified no need for the card,

or any benefit whatsoever that she was denied as a result of this application *that she withdrew*.

---

[1]    A Chase representative explained that on July 11, 2001, weeks before the August 2, 2001 "denial" letter
was sent to Plaintiff, Plaintiff withdrew the application. The deposition transcript is unavailable as of the time of
this writing. *See* Exhibit "A," p.1, third entry from bottom.

### C.    History of Communications

Plaintiff asserts in that she disputed information to Trans Union on four occasions, August, November and December 1997, and February 2001.  Plaintiff's Pretrial, p.2.  However, at deposition, Plaintiff could only establish three communications to Trans Union, August and December 1997, and February 2001.  *See e.g.,*   Plaintiff Dep., pp.57-58.  Nevertheless, there is no dispute over the fact that Trans Union received only ***one*** dispute communication from Plaintiff within the statute of limitations, in February 2001.

On January 23, 1998, Trans Union disclosed to Plaintiff that the judgment was verified and would be listed on her file.  The next communication between Plaintiff and Trans Union was ***three years and two days later***, a request for a copy of her file on January 25, 2001.  Plaintiff was prompted to request this file disclosure by the advice of her attorneys, Francis and Mailman:

```
 3  Q.      If anything prompted you that you
 4  can remember to get P-9 in January of 2001?
 5  A.      I definitely requested it or
 6  could it have been another one of these
 7  credit inquiries.  I don't know.  This is
 8  one of the forms that my lawyer has.  Is
 9  that right?  I gave it to him.
10          MR. SOUMILAS:  The question is
11  whether you remember why you may have
12  received a copy at that time.
13          THE WITNESS:  Because I believe
14  you requested it and asked me to get one.
15          MR. SOUMILAS:  Let's go off the
16  record.
17          (At this time, a discussion was
18  held off the record.)
19          MR. SOUMILAS:  I'm going to ask
20  that any answer regarding any
21  communications with counsel be stricken.[2]
```

Plaintiff's single dispute, submitted seventeen months prior to this suit, simply stated that she was "writing to dispute an item on her credit report…enclosed is a copy of the court disposition in question." Exhibit "C." Attached to that vague dispute was a copy of what was apparently a computer printout of a docket sheet from the Municipal Court. *Id.* This dispute made absolutely no reference to prior communications to Trans Union.

Trans Union did not accept the screen print as proof the judgment was inaccurate. Trans Union receives 35,000 to 50,000 disputes per week. Deposition of Eileen Little, p.114, attached hereto as Exhibit "D" (herein "Little Dep. ¶_"). The fact that some people attempt, through dishonest means, to have accurate, derogatory information removed from their files is simply indisputable. The screen print was not on letterhead, signed, or court-stamped. The purpose of the FCRA is to protect the rights of a consumer as well as the rights of the banking system and needs of commerce. *See* §1681, Findings and Purpose. Trans Union reasonably rejected the document because it lacked any semblance of authenticity.

Instead, Trans Union contacted Superior, and asked Superior to verify the status of the disputed information. Little Dep. p.39. As William Stockdale, Senior Director of Customer Information Services testified, Superior specializes in reporting public record information, it is its "core competency" as a business. Deposition of William Stockdale p.20, attached hereto as Exhibit "E" (herein "Stockdale Dep. p._").

Superior is subject to rigorous standards. For example, it is required, by its obligations in its contract with Trans Union, to physically go to the Courthouse and verify the information:

    7 Q.    Is it Superior's job to conduct
    8 the information?
    9 A.    It would be Superior's job to go

<hr>

[2]    After this testimony and Plaintiff's counsel's attempt to strike his own witness's statement, Plaintiff could not recall when counsel was hired. However, the testimony quoted above speaks for itself.

```
10  to the courthouse and verify the public
11  record.
12  Q.       They're required to physically go
13  to the courthouse and verify it?
14  A.       Yes.
```

Stockdale Dep. p.53.

Mr. Stockdale further explained the exhaustive and extensive procedures which Trans Union follows to assure it employs a contractor to assure Trans Union reports public records with maximum possible accuracy.   Based on Trans Union's evaluations, no vendor performs better than Superior.  Stockdale Dep., p.37.

Trans Union's selection of Superior as its vendor was based on accuracy, ***not*** price. Stockdale Dep. pp.27-28.   Superior is subject to several tests to assure accuracy, including "actual data comparisons" wherein Superior's data is compared to actual court records for accuracy and gathering capabilities.  *Id.* p.23.  In fact, Superior was more expensive.  *Id.* p.28. Mr. Stockdale has performed an on-site inspection to assure Superior's data gathering capabilities are credible.  *Id.* pp.34-35.  The data Superior provides is constantly statistically analyzed to assure that the volumes are consistent; a 5% deviation from the previous six transmissions causes Trans Union to inquire why a change in volume occurred. (That is, to determine the reasons that one week would have 5% more or less satisfactions or judgments than the previous six weeks.)  *Id.* pp.37-41.  In addition, if the number of consumer disputes relating to Superior increases, this will prompt an inquiry by Trans Union as to whether this is a result of inadequate data compilation.  *Id.* pp.41-43.  Mr. Stockdale was not aware of any other Trans Union lawsuit which arose out of Superior's reporting of public record information.  *Id.* p.67.

Thus, based on Superior's excellent history of reporting and procedures to maintain accuracy, Trans Union had no "notice" that Superior's reporting or verification of the public

record at issue might be suspect.  Furthermore, the dispute communication itself left no reason to question Superior's verification of the judgment in March 2001.  Plaintiff's dispute made no reference to prior communications.  Exhibit "C."  Trans Union was unaware of Plaintiff's previous disputes in February 2001 because Trans Union retains records of previous dispute history for at least 33 months (at least nine months more than the FCRA statute of limitations) Little Dep. p.7.  The records relating to Plaintiff's previous disputes were purged from its system in or before November 2000 and unavailable.  *Id.*

Ms. Little testified that there are instances in which, based upon previous disputes or other information provided by the consumer, Trans Union would request Superior provide it with actual copies of court documents.  Little Dep. pp.32-33; 45.  Whether this is necessary is analyzed on a case-by-case basis.  *Id.*  Nothing about Plaintiff's March 2001 dispute would have given rise to this need.  *Id.*

As set forth below, consistent with the Third Circuit's holding in <u>Cushman v. Trans Union Corp.</u>, 115 F.3d 220 (3rd Cir. 1997), there is no genuine issue of fact because there is no evidence upon which a reasonable jury could determine that Trans Union's reliance on Superior was negligent.  Thus, Trans Union is entitled to summary judgment on Plaintiff's reinvestigation claim.

**D.      Punitive Damages and State Law Claims.**

Plaintiff's claim for punitive damages fails because she cannot present evidence that Trans Union willfully violated the FCRA.  Given the undisputed facts relating to the extensive procedures Trans Union follows to select Superior, Trans Union did not willfully or recklessly rely on Superior to report the information at issue.  There is no basis for a reasonable jury to make a willfulness finding.

8

Plaintiff did not identify any state law claims in her pretrial and therefore such claims are abandoned. Even if not, such claims are entirely meritless. Plaintiff's defamation, invasion of privacy, and common-law negligence claims fail because she cannot meet the higher standard of malice or willful intent to injure required to overcome Trans Union's qualified immunity. Finally, Plaintiff claims under the PA CPL fail because such claims are preempted by the FCRA, or in the alternative, she has made absolutely no effort to identify how Trans Union violated the PA CPL.

Accordingly, Trans Union is entitled to summary judgment on all of Plaintiff's claims.

## II.    ARGUMENT

### A.    The Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper:

> If the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the United States Supreme Court defined the standard for summary judgment set forth in Rule 56(c):

> ...the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. 106 S. Ct. at 2552-53.

As cogently explained in Celotex Corp., the absence of an issue of material fact can be demonstrated by an absence of evidence on such issue:

> [T]he burden on the moving party may be discharged by "showing" - that is, pointing out to the district court - that there is

an absence of evidence to support the nonmoving party's case. 106
S. Ct. at 2554.

As demonstrated below, there is no genuine issue of material fact.  Plaintiff's claims
relating to disputes and credit denials prior to July 3, 2000 are barred by the statute of
limitations.  Plaintiff suffered no cognizable harm as a result of Trans Union's reporting of the
information within the statute of limitations.  There is no evidence upon which a jury could find
that Trans Union failed to reasonably reinvestigate Plaintiff's dispute.  Plaintiff cannot establish
that Trans Union willfully violated the FCRA, nor can Plaintiff establish that Trans Union acted
with malice or willful intent to injure Plaintiff.  Plaintiff's PA CPL claims fail because they are
preempted by the FCRA, and because Plaintiff has utterly failed to identify a manner in which
Trans Union violated the PA CPL.  Accordingly, Trans Union is entitled to summary judgment
on all of Plaintiff's claims.

**B.    Plaintiff's Claims Arising Prior to July 3, 2000 Are Barred by the Statute of Limitations.**

This action was commenced July 3, 2002.   Two of Plaintiff's three dispute
communications are barred by the statute of limitations because they occurred more than two (2)
years prior to the commencement of this action.   §1681p.  More importantly, the 1997 student
loan application upon which Plaintiff rests her most significant distress and damages is plainly
barred.  *See* Andrews v.  TRW, Inc., 122 S.Ct. 441, 534 U.S. 19, 151 L.Ed.2d 339 (2001);
Houghton v. Insurance Crime Prevention Institute, 795 F.2d 322 (3rd Cir. 1986); Clark v. State
Farm Fire & Casualty Ins. Co., 54 F.3d 669 (10th Cir. 1995); Rylewicz v. Beaton Servs., Ltd.,
888 F.2d 1175, 1181 (7th Cir.1989); Clay v. Equifax, Inc., 762 F.2d 952 (11th Cir. 1985).  Trans
Union raised the Affirmative Defense of the statute of limitations.  Trans Union's Answer, Ninth

Affirmative Defense.  (Docket #4.)  It is well settled that the FCRA limitations period runs from "the date on which the liability arises." See  §1681p and Houghton, *supra*.

§1681p provides:

**§1681p.         Jurisdiction of Courts; Limitation of Actions**

An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within two years from the date on which the liability arises, except that where a defendant has materially and willfully misrepresented any information required under this subchapter to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under this subchapter, the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

There is no "tolling" or "discovery rule" applicable to the FCRA.   In Andrews, *supra*, the Supreme Court expressly rejected the notion that the limitation period for such claims ought to be tolled pending "discovery" cogently stating:

The FCRA does not govern an area of the law that cries out for application of a discovery rule, nor is the statute "silent on the issue" of when the statute of limitations begins to run. [quoted language of §1681p omitted] We conclude that the text and structure of §1681p evince Congress' intent to preclude judicial implication of a discovery rule.  122  S.Ct.  at  447

There is also no "issue" relating to Plaintiff's "discovery" of the claim.  Plaintiff disputed credit information to Trans Union in August 1997, and Trans Union notified her that the information was deleted, reinserted in November 1997; Trans Union timely Plaintiff of the reinsertion.  In response to Plaintiff's December 1997 dispute, Trans Union again deleted the judgment from Plaintiff's file on January 20, 1998, and notified Plaintiff the judgment was reinserted on January 23, 1998.   Plaintiff was aware, ***four and one half years*** before

11

commencing suit, that the judgment was verified and remained on her file. Plaintiff conceded at deposition that she was aware of Trans Union's reporting:

> 5  Q.      Do you recall whether there was a
> 6  time that Trans Union told you that the
> 7  information was off of your file and then
> 8  didn't tell you that the information was
> 9  put back on your file?
> 10  A.      I believe every time that I
> 11  submitted a request to have this removed,
> 12  they did send me a letter saying they would
> 13  investigate and they got back to me and
> 14  said that they did and the information was
> 15  confirmed as being correct.  That's what I
> 16  remember.

Lawrence Dep. p.19.

Plaintiff asserts in her pretrial, for the first time, that Trans Union misidentified the identity of the source of the public record information on her file. Pretrial, p.3. This new claim, asserted for the first time at the pretrial, should be barred because it was untimely raised. Nevertheless, it is entirely without merit.

In December 1997 and  January 1998, Trans Union reinserted the judgment and, each time, informed Plaintiff that the Municipal Court was the source of the information. This was an accurate statement.  Pursuant to §1681i (discussed *infra*), the consumer reporting agency is obliged to reinvestigate the dispute with the "*original* source" of the information.  *See* 16 CFR Part 600, §611(2) (emphasis supplied).  FCRA compliance requires that the consumer reporting agency go back to the *original* source of the information, not the vendor's records.   As Mr. Stockdale made clear, Trans Union's contract expressly required Superior to physically go to the courthouse to re-verify the information. Stockdale Dep., p.53.  Thus, Trans Union identified the

original source of the information; it certainly did not willfully conceal or misrepresent any information.

Moreover, the identity of the public records vendor was not "material to the establishment of the defendant's liability to that individual…" §1681p.  Thus, no tolling applies and Plaintiff's FCRA claims pre-dating July 3, 2000 are time-barred.

Plaintiff's state law defamation and invasion of privacy claims, to the extent not preempted, are barred by a one-year statute of limitations.  42 PA.C.S. 5523.  Plaintiff's negligence claims are barred by a two-year statute of limitations.  42 PA.C.S. 5524(7).  Plaintiff's PA CPL claims are also barred by a two-year statute of limitations.  David Jeffrey Ltd. v. Lucente *7 Pa. D. & C.4th 558* 7 Pa. D. & C.4th 558; (PA Mont. Com Pl. 1990); *see also* Cramer v. Inter-County Hospitalization Plan, Inc., 46 Pa. D. & C.3d 288 (PA Lanc. Com Pl. 1986):

> No specific statute of limitations is provided in the [PA CPL], but, as cited earlier, the statute is intended to prevent fraud, Commonwealth v. Monumental, supra, and, therefore, the appropriate statute of limitations is the one for fraud generally, 42 Pa.C.S. § 5524, pursuant to which the limitations period is two years. Fickinger v. C.I. Planning Corp., 556 F. Supp. 434 (E.D., Pa. 1982). This period begins to run once the fraud is discovered, Rothman v. Fillette, 503 Pa. 259, 469 A.2d 543 (1983).

Plaintiff "discovered" the information was on her file approximately five years prior to the commencement of this action.  Under even the most liberal discovery rule, Plaintiff's claims prior to July 3, 2000 are time-barred.

### C.    Plaintiff Cannot Establish a §1681e(b) Claim.

The elements of an FCRA claim are well established.

> (1) inaccurate information was included in a consumer's credit report;  (2) the inaccuracy was due to defendant's failure to follow

13

> reasonable procedures to assure maximum possible accuracy;  ***(3)***
> ***the consumer suffered injury;  and (4) the consumer's injury was***
> ***caused by the inclusion of the inaccurate entry.***

Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3rd Cir. 1996) (emphasis supplied).  *See also*

Crabill v. Trans Union, LLC, 259 F.3d 662, 664 (7th Cir. 2002); Whelan v. Trans Union Credit

Reporting Agency, 862 F. Supp. 824, 829 (E.D. NY 1994); Cahlin v. General Motors

Acceptance Corp., 936 F.2d 1151, 1160-1161 (11th Cir. 1991);  Morris v. Credit Bureau of

Cincinnati, Inc., 563 F. Supp. 962, 967 (S.D. Ohio 1983); Bryant v. TRW, Inc., 487 F. Supp.

1234, 1238 (E.D. Mich. 1980), *aff'd*, 689 F.2d 72 (6th Cir. 1982).

The only credit "denial" which is not time barred is the 2001 Chase application for an

*additional* credit card.  However, Plaintiff withdrew the application weeks before she was

notified of the denial.  Exhibit "A."  In any event, as set forth above, Plaintiff had thousands of

dollars in available credit ($10,500from Chase alone) and identified no benefit she lost as a result

of this "denial."  Plaintiff Dep., pp. 28, 32, 95.

Plaintiff's unfounded claims that unidentified third parties declined her credit or offered

her less favorable terms should not be considered.  In Philbin, *supra*, the plaintiff produced

evidence of a denial for credit at Macy's, but only claimed, without documentation, that he was

denied a loan by Household Bank.  The Third Circuit held that plaintiff's hearsay statements of

an alleged denial, told to him by an unidentified Household representative, could not be

considered at summary judgment because such "hearsay statement[s] by…unknown

individual[s] [are] not capable of being admissible at trial… and could not be considered on a

motion for summary judgment.  Philbin, 101 F.3d at 961, FN1 (*citing* Petruzzi's IGA

Supermarkets v. Darlington Delaware Co., 998 F.2d 1224 (3rd Cir.) *cert den.* 510 U.S. 994, 114

S.Ct. 554, 126 L.Ed.2d. 455 (1993) (*internal quotations omitted*).  *See also* King v. City of

Philadelphia, 3rd Cir. No 02-2845, 2003 U.S. App. LEXIS 6290 (April 1, 2003) (deposition testimony relating to statements of unidentified declarants not capable of creating genuine issue of fact under Rule 56(e)); Blackburn v. United Parcel Serv., 179 F.3d 81, 95 (3rd Cir. 1999), "a hearsay statement that is not capable of being admissible at trial should not be considered on a summary judgment motion." *Citing* Philbin *supra*.) Therefore, because there is **no** evidence Plaintiff was denied a credit card, or paid more for a mortgage or automobile loan, Trans Union is entitled to summary judgment on Plaintiff's unspecified claims of harm connected to these transactions.

Significantly, Plaintiff conceded that, within the relevant statute of limitations, she suffered the least:

```
17  Q.     We discussed previously between
18  January of '98 and January of 2001.  So,
19  now I'm asking that question from between
20  January of 2001 and when the judgment was
21  taken off of your file.
22       MR. SOUMILAS:  Which for the
23  record was some time after the lawsuit.  I
24  think initially you had bracketed the time
                        70
1  as P-11 through the commencement of the
2  lawsuit.  The last two years roughly.
3       THE WITNESS:  I suppose the last
4  two years were probably the least of my
5  upsets.  But as I mentioned, any time I
6  would go to apply for any kind of credit, I
7  was always -- it's in the back of my mind.
8  It's a worry.  A worry that I don't need.
9  If you want to say a slander against my
10  name.  Prior to the last year or so there
11  was a lot of upsetment with it because it
12  involved my daughter and our family and her
13  education.
14  BY MR. CREECH:
15  Q.     That was the student loan in '97,
16  right?
```

```
17  A.      Yes.  We were down to the wire
18  with time and we really had to -- it caused
19  a lot of upsetment in my family.  It was
20  her and myself and, you know, nobody there
21  to help us out.  And then we have this and
22  it was just a lot of stress and aggravation
23  to us.
```

Plaintiff Dep. pp.69-70 (emphasis supplied).  Plaintiff's claims which pre-date July 2000,

particularly the student loan in 1997, are all time-barred for the purposes of this action.

Moreover, "worry" "in the back of [her] mind" cannot support an FCRA claim.  As the

Second Circuit held in Casella  v. Equifax Credit Info. Servs.,  56 F.3d 469, 475 (2nd Cir. 1995)

**fear** that inaccurate information **might** have been disseminated is too speculative as a matter of

law to be cognizable:

> Casella presented no evidence that during the period in which
> Equifax and Trans Union carried the inaccurate [credit] entry,
> either of them provided appellant's credit report to any third party.
> No rational trier of fact could infer from this record that any
> potential creditor or other person in appellant's community learned
> of any harmful information from appellees. **Casella's argument
> boils down to the bare contention that he is entitled to damages
> for pain and suffering simply because he knew of an inaccurate
> and potentially damaging item in his credit report. We are
> unaware of any case extending FCRA damages that far**.... and
> we decline to reach that result here. Casella 56 F.3d at 475
> (citations omitted, emphasis supplied).

Plaintiff's pretrial asserts she was "defamed" by Trans Union's publication to virtually

every credit grantor which saw her consumer report.  Plaintiff's Pretrial, p.3.  This claim is also

without merit because the disclosure of the information must be connected to harm to give rise to

a negligent FCRA claim.  In Obabueki v. Choicepoint, Inc., 236 F.Supp.2d 278 (S.D. NY 2002)

*aff'd* 319 F.3d 87 (2nd Cir. 2003), a jury awarded $450,000 in compensatory damages in favor of

a consumer who was denied employment by IBM, which received a Choicepoint consumer

16

report. The Court vacated the jury award because, although Choicepoint disclosed inaccurate information as a result of its failure to follow reasonable procedures, it did not cause the plaintiff to lose the employment opportunity:

> [T]he FCRA is not a strict liability statute; Choicepoint's violation of the statute does not relieve plaintiff of his burden to establish that those violations were the proximate cause of plaintiff's injury. As the Second Circuit held in Casella [*supra*], a court may properly reject a plaintiff's claims "due to a lack of causation between the harm alleged" and a defendant's "violations of the FCRA." Casella, *supra*, 56 F.3d at 474-75. As discussed above, plaintiff in this action has failed to show that his loss of the employment opportunity at IBM was proximately caused by either Choicepoint's provision of the initial incorrect report or by Choicepoint's failure to obtain proper certification from IBM. Accordingly, Choicepoint's motion for judgment as a matter of law is granted. 236 F.Supp.2d at 285.

The Second Circuit affirmed. 319 F.3d 87 (2nd Cir. 2003). This is entirely consistent with the Third Circuit's holding in Philbin, where the Court of Appeals expressly noted that:

> We hasten to add that the burden of proving causation remains with the plaintiff at all times and never shifts to the defendant. 101 F.3d at 970.

Accordingly, Trans Union is entitled to summary judgment because she cannot demonstrate that Trans Union caused her harm.

**D.    Plaintiff Cannot Establish a §1681i Claim**

**1.    Plaintiff Cannot Demonstrate Harm In Connection With Her February 2001 Dispute**

In the context of §1681e(b), causation and harm are essential elements of a claim for a negligent violation. *See* Philbin and Crabill, *supra*. The same holds true for §1681i claims. This is so because a claim negligent violations of the FCRA is based upon §1681o, which provides recovery solely for "any actual damages sustained by the consumer as a result of the [negligent]

failure [to comply with the FCRA.]"    §1681o(a)(1).    No statutory damages are allowed for negligent violations, and attorneys fees under §1681o(a)(2) are only allowable if damages are recovered.  *See* <u>Crabill</u>, *supra*; <u>Nagle v. Experian Information Solutions, Inc.</u>, 297 F.3d 1305 (11th Cir. 2002).

Here, after she consulted counsel, Plaintiff sent a single letter of dispute.    Plaintiff has failed to articulate any harm beyond the "worry" "in the back of [her] mind" which clearly exceeds the bounds of causation with respect to a §1681e(b) claim.  *See* <u>Casella</u> and <u>Obabueki</u>, *supra*.  In fact, Plaintiff did not even recall receiving the results of the reinvestigation.  Plaintiff Dep. p.64.  Accordingly, because Plaintiff has failed to identify any cognizable harm, Trans Union is entitled to summary judgment on Plaintiff's negligent §1681i claim.

### 2.    There Is an Absence of Evidence that Trans Union Failed To Reasonably Reinvestigate Plaintiff's Dispute.

In <u>Cushman</u> *supra*, the court of appeals held that a consumer reporting agency "***may be required***, in certain circumstances … to go beyond the original source." 115 F.3d at 227 (emphasis supplied).  Two factors which determine whether the agency has such duty are: 1) ***notice*** of unreliability of the original source, and 2) the cost of verifying the accuracy of the source versus the possible harm to the consumer.  *Id.*

Here, Trans Union's reliance on Superior cannot be deemed unreasonable.  Trans Union was without notice that its vendor was unreliable.  It routinely subjects Superior's information and procedures to compliance reviews.  (*See, e.g.* Stockdale Dep., 23, 27-28, 34-35, 37-41.) Trans Union had no notice that the information was previously disputed or verified in the past, either by Plaintiff or in its own existing records.  Ms. Little testified that with such notice, Trans

Union may have had reason to question Superior's verification. Little Dep. p.45. Based on Plaintiff's single 2001 dispute, there was no reason to do so.

Trans Union is entitled to summary judgment because Plaintiff cannot present ***any*** evidence upon which a reasonable jury could find that Trans Union's reliance upon Superior was unreasonable. Because the FCRA is not a strict liability statute, there must be ***some*** evidence by which a trier of fact could find that Trans Union's reinvestigation procedures were unreasonable. For example, In <u>Dalton v. Capital Associated Industries, Inc.</u>, 257 F.3d.409, 415 (4th Cir. 2001), the Fourth Circuit held that a vendor's reliance upon the "informal legal opinion" of a clerk, and the agency's failure to require more rigorous standards by the vendor, was evidence of a possible failure to follow reasonable procedures. Here, no such circumstances exist.

In <u>Obabueki v. IBM Corp.</u>, 145 F. Supp. 2d 371 (S.D. NY 2001), Choicepoint, a consumer reporting agency defendant, moved for summary judgment on Plaintiff's §1681e(b) (reasonable procedures) and §1681k (public record information for employment purposes). The Court denied summary judgment because the consumer presented several factors by which a reasonable jury could find that Choicepoint's procedures were unreasonable, including, *inter alia,* always selecting the lowest cost supplier; assumed accuracy of the supplier's information (no audits or evaluations); an "implied" duty to report accurate information (not an express requirement); and no training of outside vendors. *Id.* at 397-398.

Instantly, Trans Union has presented extensive evidence that Superior's qualifications, experience and past performance were of the highest quality in the industry. Stockdale Dep., p.37. Plaintiff has not presented, and cannot present, any evidence upon which a jury could find that Trans Union's reliance on Superior was unreasonable. Therefore, Trans Union is entitled to summary judgment on Plaintiff's §1681i claim.

19

**E.    Plaintiff Cannot Present Evidence Sufficient to Sustain Her  Punitive Damages Claims**.

Trans Union is unquestionably entitled to report public record information and to obtain such information from an independent contractor. *See, e.g.* Dalton, *supra*.  Trans Union hired a vendor which was contractually obligated to physically go to the courthouse to re-verify all disputed information.  Superior also satisfied Trans Union's accuracy inspections.

Plaintiff has presented no ***evidence*** to support her claim of a willful violation of the FCRA.  As such, Plaintiff cannot recover punitive damages.[3]  Trans Union responded to every dispute communication and disclosed the original source of the information.   There was no misrepresentation or concealment.

In order to recover punitive damages, a consumer must demonstrate that the consumer reporting agency willfully violated the FCRA. §1681n.  As stated in Cushman, *supra*:

> To show willful noncompliance with the FCRA**,** [the consumer] must show that [the consumer reporting agency] 'knowingly and intentionally committed an act in conscious disregard for the rights of others...' 115 F.3d at 226 (*citing* Philbin v. Trans Union Corp., 101 F.3d 957, 970 (3rd Cir. 1996.)

The Cushman Court further held that:

> to justify an award of punitive damages, a defendant's actions must be on the same order as willful concealments or misrepresentations. If [the consumer] can prove... that [the defendant] adopted its reinvestigation policy either knowing that policy to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy contravened those rights, [he or] she may be awarded punitive damages.

---

[3]      Plaintiff's assertion that Superior did not physically go to the courthouse to reverify the disputed judgment is unsubstantiated and cannot rescue the claim from summary judgment.   There is nothing greater than a "metaphysical doubt" to support this assertion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Virtually every court of appeals has required evidence of a willful concealment or misrepresentation to establish FCRA punitive damages.  *See* Cousin v. Trans Union Corp., 246 F.3d 359 (5th Cir. 2001) *cert den.*122 S.Ct. 346, 151 L.Ed.2d 261; Casella, *supra*; Stevenson v. TRW, Inc., 987 F.2d 288 (5th Cir.1993); Dalton, *supra.*

In Philbin, *supra,* the Plaintiff, James R. Philbin, Jr., had a tax lien on his consumer report which actually belonged to Plaintiff's father, James R. Philbin, Sr. 101 F.3d at 960.  The plaintiff notified the defendant of the error several times, and the defendant failed to correct it. 101 F.3d at 970.  At one point in time, the information was corrected, but reappeared, and when the plaintiff notified the defendant of this, the defendant failed to correct the error.  *Id*.  The Court, reviewing these facts, held that "[t]his, however, falls short of evidence of a willful violation."  *Id*.

Here, Plaintiff's claims are far weaker than the facts in Philbin.  Trans Union responded to Plaintiff's single dispute in 2001 and informed Plaintiff of the results of the reinvestigation. The 1997 communications are time-barred.  Even if they were considered, nothing about Trans Union's actions in the handling the disputes in 1997 can be construed to be on the same order as willful concealments or misrepresentations in violation of Plaintiff's FCRA rights.  Plaintiff conceded Trans Union reinvestigated each disputed and informed her that the judgment was verified, nothing was concealed.

Accordingly, Plaintiff cannot sustain a claim for punitive damages under the FCRA.

**F.    Plaintiff's Common Law Negligence and Invasion of Privacy/False Light Claims Fail Because He Cannot Overcome Trans Union's FCRA Qualified Immunity.**

Trans Union is entitled to a qualified immunity under the FCRA,  §1681h(e), which states in pertinent part:

> (e) Limitation of liability.  Except as provided in sections 616 and 617 [§§1681n and 1681o], no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency... except as to false information furnished with malice or willful intent to injure such consumer.

(*See* <u>Thornton v. Equifax, Inc.,</u> 619 F.2d 700, 703 (8th Cir.1980), *cert. denied*, 449 U.S. 835 (1980); <u>Bloom v. I.C. Systems, Inc.,</u> 972 F.2d 1067, 1069 (2nd Cir. 1992); <u>Cousin v. Trans Union Corp.,</u> 246 F.3d 359, 375-376 (5th Cir. 2001). As set forth in <u>Thornton</u>, *supra*,

> Section 1681h(e) is recognized as providing qualified immunity for consumer reporting agencies with an exception from such qualified immunity being made for actions pursuant to sections 1681n and 1681o.... **Such an exception was not meant to lessen the standard necessary to overcome this qualified immunity in <u>defamation</u> actions.** (<u>emphasis</u> in original) (**Bold** supplied) 619 F.2d at 703

A plaintiff who cannot prove willfulness to establish a §1681n willfulness claim cannot meet the higher burden under §1681h(e) to bring a state law cause of action for claims in the nature of defamation, invasion of privacy, or negligence.  Thus, Trans Union is entitled to summary judgment on Plaintiff's claims of defamation, negligence and invasion of privacy/false light.

### G. Plaintiff's Pennsylvania Unfair Trade Practices and Consumer Protection Law  Claims Fail Because Such Claims Are Preempted by the FCRA.

Plaintiff has utterly failed, in her pretrial or elsewhere, to allege any act or omission by Trans Union which would constitute an "unfair trade practice" as defined by 73 P.S. §201-2(4). The only alleged basis for this claim is an erroneous citation to §1681s, which is for *administrative enforcement* of the FCRA.  Plaintiff asserts that §1681s provides that a violation

22

of the FCRA constitutes a violation of PA CPL.   Complaint ¶58.   This is simply not so.

§1681s(a)(1) states, in pertinent part:

> For the purpose of the exercise by the Federal Trade Commission of its functions and powers under the Federal Trade Commission Act, a violation of any requirement or prohibition imposed under this subchapter shall constitute an unfair or deceptive act or practice in commerce in violation of section 5(a) of the Federal Trade Commission Act [15 U.S.C. 45(a)] and shall be subject to enforcement by the Federal Trade Commission under section 5(b) thereof [15 U.S.C. 45(b)] with respect to any consumer reporting agency or person subject to enforcement by the Federal Trade Commission pursuant to this subsection, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests in the Federal Trade Commission Act. (emphasis supplied.)

The language of that provision does not create a state law claim or other private right of action.  As §1681s provides, the broad enforcement provisions of the Federal Trade Commission Act are reserved exclusively for the FTC.  There is absolutely no mention of the PA CPL, any state consumer protection law, or any private cause of action.  For example, the FCRA reserves injunctive relief to actions brought by the FTC or States; consumers do not have a right to such relief.  *See* Washington v. CSC Credit Services,. Inc., 199 F.3d 263, 268-269 (5th Cir. 2000). The FCRA specifically creates a narrower private cause of action for consumers which is limited to the recovery of damages. §§1681n and o.

In the alternative, in Jaramillo v. Experian Info. Solutions, Inc., 155 F.Supp.2d 356, 362 (E.D. PA 2001) *recon. granted on other grounds*, 2001 U.S. Dist. Lexis 10221, the Court held that PA CPL claims against a furnisher of information are barred by §1681t(b)(1)(F) which regulates the responsibilities of furnishers of information.  The same holds true for Plaintiff's §1681i claims.

FCRA §1681t(b)(1)(B) and (E) state that "no requirement or prohibition may be imposed under the laws of any state... with respect to any subject matter regulated under...":

> **(B) section 1681i** of this title, relating to the time by which a consumer reporting agency must take any action, including the provision of notification to a consumer or other person, **in any procedure related to the disputed accuracy of information in a consumer's file**, except that this subparagraph shall not apply to any State law in effect on September 30, 1996;

> **(E)** section 1681c of this title, **relating to information contained in consumer reports**, except that this subparagraph shall not apply to any State law in effect on September 30, 1996; (Emphasis supplied).

Accordingly, Plaintiff's claims relating to the reinvestigation, the contents of consumer reports, and the contents of disclosures provided to Plaintiff are preempted by the FCRA.

This is a case of first impression; no court has ruled whether the PA CPL applies to consumer reporting agencies. Using the Federal Trade Commission Act and Lanham Act as a guide (*see* Commonwealth of Pennsylvania by Creamer v. Monumental Properties, Inc., 329 A.2d 812, 818-819 (PA Com. 1974)), the remedies of the FCRA are limited to consumers under §1681n and §1681o. Accordingly, a violation of the FCRA does not constitute a violation of the PA CPL.

Therefore, Trans Union is entitled to summary judgment on Plaintiff's PA CPL claims.

## III.    CONCLUSION

For all the above reasons and authorities, Defendant Trans Union LLC respectfully moves this Court to enter summary judgment in its favor, and to dismiss Plaintiff's claims with prejudice.

Respectfully Submitted,

_____
BRUCE S. LUCKMAN          (38636)
TIMOTHY P. CREECH         (81728)

SATZBERG, TRICHON,
   KOGAN & WERTHEIMER, P.C.
1818 Market St., 30th Floor
Philadelphia, PA 19103
(215) 575-7600; Fax: (215) 575-7688
bluckman@mstkw.com
tcreech@mstkw.com

*Attorneys for Defendant,*
*Trans Union LLC*

DATED:        June 16, 2003