```
 1        IN THE UNITED STATES DISTRICT COURT
 2    FOR THE EASTERN DISTRICT OF PENNSYLVANIA
 3                       - - -
 4   GRACE LAWRENCE              :CIVIL ACTION
 5        - VS -                 :
 6   TRANS UNION LLC             :
 7   CITY OF PHILADELPHIA        :NO. 02-CV-4440
 8                       - - -
 9         Oral deposition of EILEEN LITTLE,
10   taken pursuant to notice, held at the
11   offices of FRANCIS & MAILMAN, 100 South
12   Broad Street, Suite 1902, Philadelphia,
13   Pennsylvania, on Tuesday, May 13, 2003,
14   beginning at approximately 10:35 a.m.,
15   before Jen Marchesani, a Certified
16   Professional Reporter and a Commissioner of
17   the Commonwealth of Pennsylvania.
18                       - - -
19           KAPLAN, LEAMAN AND WOLFE
20         The Bourse Building, Suite 970
21         111 South Independence Mall East
22         Philadelphia, Pennsylvania 19106
23                  (215) 922-7112
24
```

[DISK ENCLOSED]

1  to determine if they exist, or do you know
2  they do not exist?
3  A.     I know they do not exist.
4  Q.     Is that because of a records'
5  retention policy that Trans Union has?
6  A.     Yes.
7  Q.     What is it?
8  A.     The information is archived in
9  the system for 90 days after the date of
10 the last activity and then stored for two
11 years.
12 Q.     Then what happens with the
13 records after two years?
14 A.     They're purged from the system
15 and the document retention for the hard
16 copies would be two years from the date of
17 receipt.
18 Q.     So, is it fair to say that the
19 only records that you're aware of that
20 pertain to any disputes that Ms. Lawrence
21 had with Trans Union about inaccuracies in
22 her credit file or alleged inaccuracies in
23 her credit file, are those which my office
24 supplied to Trans Union?

1  THE WITNESS: Other than talking
2  to a Trans Union representative, no.
3  BY MR. FRANCIS:
4  Q.      Do you know whether or not
5  anybody at Trans Union has ever proposed or
6  discussed listing in the documentation that
7  Trans Union sends along with consumer file
8  disclosures what types of documents a
9  consumer must provide in connection with
10 disputes?
11 A.      Not that I'm aware of.
12 Q.      Can you tell me the instances in
13 which, if any, Trans Union would require
14 the vendor to provide the actual court
15 records in response to a dispute initiated
16 by a consumer about a judgment?
17         MR. LUCKMAN: Object to the form.
18         THE WITNESS: If we're aware that
19 the consumer has documentation stating this
20 and the vender's coming back stating this,
21 then we might contact them again and ask
22 them I want all the documentation.
23 BY MR. FRANCIS:
24 Q.      Any other instances?

EILEEN LITTLE

33

1   MR. LUCKMAN: Object to the form.
2   THE WITNESS: I mean, I'd be
3   making them up. As they happen, then we
4   make a decision what our needs are.
5   BY MR. FRANCIS:
6   Q.     I guess my question is, you're
7   not the one that's actually doing these
8   disputes anymore, right?
9   A.     Right.
10  Q.     How do the people who are doing
11  the disputes know what to do, when to ask
12  for court records?
13  A.     Well, there would be something
14  that would trigger that request in the
15  correspondence from the consumer in the
16  response from the vendor. And if they were
17  questionable of something, they would go to
18  team leader senior rep and they would order
19  that stuff.
20  Q.     How often does that occur in
21  connection with a public -- in terms of
22  handling a dispute over a judgment?
23  A.     It's very rare that we would need
24  the hard documents.

KAPLAN, LEAMAN AND WOLFE (215) 922-7112

1  that with that dispute Ms. Lawrence
2  included the page that immediately follows?
3  A.        Yes.
4  Q.        And what is this document?
5  A.        It's a court document.
6  Q.        Pertaining to what?
7  A.        A judgment.
8            MR. LUCKMAN: Object to the form.
9  BY MR. FRANCIS:
10 Q.        The judgment that she was
11 disputing in this case, correct?
12 A.        Yes.
13 Q.        From your review of the records,
14 what did Trans Union do when it received
15 this correspondence from Ms. Lawrence?
16 A.        We contacted the vendor for that
17 area to reinvestigate it.
18 Q.        You sent an ACDV?
19 A.        ACDV or CDV. I don't know.
20 Q.        Do you know whether that record
21 still exists?
22 A.        We can't find it. We have the
23 screen print. I don't have a hard copy.
24 Q.        So, you see the screen that has

45

BY MR. FRANCIS:

Q.   Is this one of the instances that you testified about previously where it would be Trans Union's policy to request a copy of the actual court records?

A.   Okay. I didn't say there was a policy. I said there were circumstances that could initiate the investigator to request that. Did that happen, no.

Q.   I know it didn't happen. Is this one of those circumstances that you're referring to?

A.   No.

Q.   I thought you said before that one of the circumstances would be where the consumer provided Trans Union with some type of documentation about the dispute about the judgment?

A.   I said that could be one of the circumstances if the investigator felt that they needed that information or the CDV operator felt they needed that. And after we notified them of the results of our investigation, if the consumer came back

1  knowledge as you sit here today that
2  Superior has ever informed Trans Union at
3  any time to cease reporting this account?
4  A.        Not that I'm aware.
5  Q.        Just to review some testimony you
6  gave previously. Has there been any
7  material change in the number of disputes
8  that Trans Union receives on a weekly basis
9  since I last took your deposition back in
10 February of this year?
11         MR. LUCKMAN: Object to the form.
12         THE WITNESS: No.
13 BY MR. FRANCIS:
14 Q.        And is it safe to characterize
15 that number as between 35 and 50,000
16 disputes per week?
17 A.        Yes.
18 Q.        And has there been any change in
19 the number of dispute investigators that
20 your company assigns to handle consumer
21 credit disputes since February of this
22 year?
23 A.        No.
24 Q.        How many dispute investigators