IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRACE LAWRENCE<br><br>                              Plaintiff,<br>     v.<br><br>TRANS UNION LLC<br>CITY OF PHILADELPHIA<br>                              Defendant. | C.A. NO: 02-CV-4440 |

**TRANS UNION LLC'S MEMORANDUM OF LAW IN
REPLY TO PLAINTIFF'S OPPOSITION TO
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Trans Union LLC ("Trans Union"), by and through its undersigned attorneys, states as follows in reply to plaintiff's opposition to Trans Union's motion for summary judgment:

APPLICATION OF A NEBULOUS SIX YEAR STATE LAW LIMITATIONS PERIOD
TO A LONG AGO EXPIRED FCRA CLAIM UNFAIRLY PREJUDICES TRANS
UNION

Plaintiff claims she was denied credit and that Trans Union failed to duly reinvestigate her disputes in 1997. The undisputed record demonstrates that there were no communications between plaintiff and Trans Union between January 1998 and January 2001, **three years**. Any potential FCRA claim based upon her contacts with Trans Union, or Trans Union's reporting of information, expired no later than January 2000. Trans Union has absolutely no records from the prior communications.

Plaintiff seeks to circumvent not only the FCRA statute of limitations bar, but her own inactivity for over three years, by asking the court to apply a questionable six (6) year Pennsylvania statute of limitations for unfair trade practices claims. Plaintiff's contention is that her ancient FCRA violation should be given special dispensation and be

revivified under the generic "catch-all of the CPL because the statute of limitations for CPL ought to be the "catch-all" 6 years. There is no statutory or case law which supports plaintiff's contention that a long ago expired FCRA claim can be the basis of a CPL claim. Indeed, U.S. Supreme Court authority demands a contrary result.

In <u>Andrews v. TRW, Inc</u>., 122 S.Ct. 441, 534 U.S. 19, 151 L.Ed.2d 339 (2001), the Supreme Court expressly rejected the notion that the limitation period for FCRA claims ought to be tolled pending "discovery" cogently stating:

> The FCRA does not govern an area of the law that cries out for application of a discovery rule, nor is the statute "silent on the issue" of when the statute of limitations begins to run. [quoted language of §1681p omitted] We conclude that the text and structure of §1681p evince Congress' intent to preclude judicial implication of a discovery rule. 122 S.Ct. at 447

Plaintiff's proposal that a six year statute of limitations ought to apply to a consumer reporting agency seeks to undo both the Congressional limitations in place since 1969, but also the Supreme Court's reinforcement of that limitation in <u>Andrews</u>.

EVEN IF NOT TIME BARRED, THE DENIALS OCCURRED BEFORE NOTICE TO TRANS UNION:

Plaintiff's claim that she was denied a Sallie Mae and or Key Bank student loan in the summer of 1997 is barred for many reasons. First, it is time barred under the FCRA. (1681p). Next, plaintiff concedes the denial(s) occurred before plaintiff disputed the judgment to Trans Union. (See plaintiff's Opposition, p. 6) The denial led to her obtaining a copy of her report which is how she first saw the judgment. (Ibid.) Because Trans Union was not on notice that the account did not belong to Plaintiff. As the Court of Appeals held in <u>Cushman v. Trans Union Corp.</u>, 115 F.3d 220 (3rd Cir. 1997):

> [A] credit reporting agency may initially rely on public court documents, because to require otherwise would be burdensome and inefficient. 115 F.3d at 224 *quoting* <u>Henson v. CSC Credit Servs.</u>, 29 F.3d 280, 286-7 (7th Cir. 1994).

As the Court held in <u>Podell v. Citicorp Diners Club</u>, 112 F.3d 98 (2nd Cir. 1997):

> Trans Union was entitled, as a matter of law, to report the information from Podell's creditors regarding his indebtedness at least until it heard from Podell directly. 112 F.3d at 104 (*quotations, brackets omitted*).

Because there was no reason to doubt the accuracy of information furnished by the City of Philadelphia to Superior (and then to Trans Union) prior to Plaintiff's dispute, Trans Union is entitled to summary judgment on all claims which may have arisen before the first dispute in August 1997, and in particular the July 1997 Sallie Mae claim.

With respect to the alleged, but unidentified mortgage and car loan applications, plaintiff failed to articulate any opposition to Trans Union's motion and failed to identify any cognizable witnesses in her pretrial from any of the still unidentified lenders (or Sallie Mae). Plaintiff references, but fails to present any evidence or caselaw to support such claims. Plaintiff merely contends: "she did not receive or keep adverse action letters…," and "lost potential credit opportunities." (Opposition, p. 21) The unidentified claims should be dismissed as abandoned or because they lack merit for the reasons more fully set forth in Trans Union's opening Brief. (See discussion of <u>Philbin</u>, Brief, pp. 14-15). The "potential" claims should be dismissed as grossly speculative. That sort of conclusory and speculative assertion does not satisfy plaintiff's burden on summary judgment because it is *her* burden to demonstrate the elements of her claim. *See* <u>Philbin</u> *supra* and discussion of <u>Casella v. Equifax Credit Info. Servs.</u>, 56 F.3d 469, 475 (2nd Cir. 1995); <u>Obabueki v. Choicepoint, Inc.</u>, 236 F.Supp.2d 278 (S.D. NY 2002) *aff'd* 319 F.3d 87 (2nd Cir. 2003), Trans Union's opening brief, pp.16-17.

Finally, with respect to the Chase application, plaintiff has not and cannot explain how she was "harmed" when she withdrew (or even was denied) a credit card which was

entirely redundant.  As more fully explained in Trans Union's  at is relevant is that she did not need because of existing $10,500.00 in **Chase** credit already available to her. (See Trans Union's opening brief. p.4)  As such no harm, actual, emotional or financial can be causally connected to that application.

Significantly, because no FCRA claim can be established based upon such transactions, the events cannot be deemed violations to sustain CPL claims.  Any other result will unfairly prejudice Trans Union.

SUPERIOR'S REINVESTIGATION:

Contrary to plaintiff's unfounded assertions, Trans Union's public records vendor, Superior, reinvestigates each disputed judgment by going to the actual courthouse and reviewing the court files and records, **not** the docket.  (See plaintiff's Opposition, p. 17) Indeed, the individual who did the investigation of plaintiff's 2001 dispute has twenty-three (23) years experience working as a clerk in the Philadelphia Prothonotary's Office.

***Brief discussion of Henson and quotes from new affidavits..***

PUNITIVE DAMAGES:

Here, plaintiff opposes Trans Union's motion for summary judgment on punitive damages on three delineated grounds:  First, Trans Union does not send "all relevant information" regarding the consumer's dispute. (Opposition, p. 40)  Second, Trans Union did not verify with the Municipal Court (Ibid.)   Third, Trans Union reported a judgment "it admittedly knows nothing about."  (Id. at 42)

With respect to the first contention, that Trans Union failed to send "all relevant information," there is no case or statutory authority which suggests Trans Union needed to send documentation as opposed to a dispute which required Superior to go to the court and verify all available information respecting the judgment.  (See Stockdale dep)

Further, as more fully described above, Trans Union does not "parrot" the original tape furnished by the City of Philadelphia with the judgment. Instead, Trans Union required Superior to actual physically go to the Municipal Court, pull the Court file and review the pleadings and records to verify the accuracy of the judgment. (Cerbus Dec. paras ; Palmer Dec paras. ) The procedures require a manual review consistent with the FCRA and relevant caselaw. If, in fact, a "human error" by the verifier occurred in the process of that review, there is absolutely no basis to find a conscious or wilful disregard of plaintiff's FCRA rights.

Plaintiff last contention is contrary to the testimony of Stockdale and the Cerbus and Palmer Declarations which demonstrate that Superior has an excellent track record and is routinely audited and even subject to challenges from other vendors. (See Stockdale Dep. p; Cerbus Dec. para. ) The fact that Ms. Little was not aware of the accuracy of the judgment in May 2003, almost a year after it was permanently deleted (See plaintiff's brief, p.) is not germane to plaintiff's claims instantly.

Finally, Trans Union respectfully submits that <u>Sheffer v. Trans Union</u>, recently decided by Judge Shiller is not germane instantly and is wrongly decided with respect to Trans Union. First, the Court's reliance upon <u>Boris v. Choicepoint Servs.</u>, 249 F.Supp.2d 851, 862 (W.D.Ky. 2003) was erroneous. In <u>Boris</u>, plaintiff presented evidence of the following elements (#): That defendant's report (1) contained erroneous "fire" claims, which should have been "water" claims; plaintiff disputed that error for times. 249 F.Supp.2d at 862. (2) Defendant finally changed the fire claims to water claims, (3) **but added back the fire claims**. Ibid. (4) Defendant reinserted the erroneous and previously disputed fire claims "despite knowing that CNA [the information furnisher] may have sent [defendant] bad information." Ibid. (5) **After** plaintiff filed her

action, defendant left the erroneous claims on her file for eleven months and (6) reported the claims to insurers causing plaintiff harm and distress. Ibid. (7) The sole reason the erroneous claims finally came off plaintiff's report was that the information "was so old it expired." Ibid. Finally, (8) defendant "displayed a generally uncaring attitude at trial" and "throughout the trial, [defendant] made several ill-advised efforts at trial to blame or criticize plaintiff for her own problems." Id. at 862 and 863.

Except for the existence of disputes, none of the elements **proved** in Boris were **alleged** against Trans Union in Sheffer. There was no deletion and reinsertion, there was no harm after the dispute.

Instantly, the judgment was deleted due to late responses, not inaccuracy; plaintiff was duly notified when the judgment was verified and reinstated. In the Philbin v. Trans Union Corp., 101 F.3d 957, 970 (3rd Cir. 1996), the seminal punitive damages case in this and many other circuits, the court of appeals has held:

> Philbin claims that TUC is liable for a willful violation because he notified it of the error several times and TUC failed to correct it. However, after the first notification, in 1990, TUC did remove the erroneous information for a period of time. * * * There appears to be one instance -in November of 1992 -- when he notified TUC that, despite the earlier correction, the error re-appeared, and TUC failed to correct it. This, however, falls short of evidence of a willful violation.
>
> Its actions do not rise to the level of a "willful misrepresentation or concealment" that justifies finding a willful violation. *Pinner, 805 F.2d at 1263;* cf. *Millstone, 528 F.2d at 834.*

As such, the reinsertion of previously disputed and deleted information **is not** sufficient to demonstrate "wilful misrepresentation or concealment" necessary to establish an FCRA punitive damages claim in this circuit. (See also, Cousin, ) To the extent that Boris (or Sheffer) can be viewed to be inconsistent in its ruling on FCRA

punitive damages, the case is contrary to binding court of appeals authority (Philbin) and must be disregarded.

However, Trans Union respectfully submits that Boris is not inconsistent, but simply decided in the context of completely different facts and in the face of defendant's egregious conduct which started before the lawsuit and continued throughout the trial. Not surprisingly, plaintiff did not reference Boris in her brief opposition to Trans Union's Motion for summary judgment on punitive damages; the case is simply not germane. (See plaintiffs Opposition, pp. 38-43)(Plaintiff does cite to Boris for an unrelated issue.)