**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GRACE LAWRENCE<br><br>                    Plaintiff,<br>     v.<br><br>TRANS UNION LLC<br>CITY OF PHILADELPHIA<br>                    Defendant. | C.A. NO: 02-CV-4440 |

**TRANS UNION LLC'S MEMORANDUM OF LAW IN**
**REPLY TO PLAINTIFF'S OPPOSITION TO**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Trans Union LLC ("Trans Union"), by and through its undersigned attorneys, states as follows in reply to Plaintiff's opposition to Trans Union's motion for summary judgment:

**APPLICATION OF A NEBULOUS SIX YEAR STATE LAW LIMITATIONS PERIOD TO A LONG AGO EXPIRED FCRA CLAIM UNFAIRLY PREJUDICES TRANS UNION**

Plaintiff claims she was denied credit and that Trans Union later failed to duly reinvestigate her disputes in **<u>1997</u>**. The undisputed record demonstrates that there were no communications between Plaintiff and Trans Union between January 1998 and January 2001, **three years**. Any potential FCRA claim based upon her contacts with Trans Union, or Trans Union's reporting of information in 1997, expired no later than January 2000. Trans Union has absolutely no records from the prior communications and the bank records were long ago destroyed.

Plaintiff seeks to circumvent not only the FCRA statute of limitations bar, but her own inactivity for over three years, by asking the court to apply a questionable six (6) year Pennsylvania statute of limitations to a never before recognized claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 *et seq.* (the "PA CPL").

Plaintiff's contention is that her ancient FCRA violation should be given special dispensation and be revivified under the generic "catch-all" of the CPL, because the statute of limitations for these claims ought to be the "catch-all" 6 years.  There is no statutory or case law which supports Plaintiff's contention that a long ago expired FCRA claim can be the basis of a CPL claim.  Indeed, U.S. Supreme Court authority demands a contrary result.

In <u>Andrews v. TRW, Inc</u>., 122 S.Ct. 441, 534 U.S. 19, 151 L.Ed.2d 339 (2001), the Supreme Court expressly rejected the notion that the limitation period for FCRA claims ought to be tolled pending "discovery" cogently stating:

> The FCRA does not govern an area of the law that cries out for application of a discovery rule, nor is the statute "silent on the issue" of when the statute of limitations begins to run. [quoted language of §1681p omitted] We conclude that the text and structure of §1681p evince Congress' intent to preclude judicial implication of a discovery rule. 122 S.Ct. at 447

Plaintiff's proposal that a six year statute of limitations ought to apply to a consumer reporting agency seeks to undo both the Congressional limitations in place since 1969, but also the Supreme Court's reinforcement of that limitation in <u>Andrews</u>.

In this connection, Trans Union submits that the issue is not only one of preemption, but of overreaching to establish a PA CPL cause of action out of and in order to rescue a time-barred FCRA claim. First, plaintiff was not a purchaser of anything from Trans Union and Trans Union's "relationship" with plaintiff arises only out of the duties created by the FCRA.  Contrary to the instant circumstances, every case cited by plaintiff, and virtually all PA CPL cases, are inapposite because each admittedly arises from a purchase or rental of something or the collection of a debt arising out of a purchase.  For example, <u>Gabriel v. O'Hara</u>, 368 Pa.Super. 383, 534 A. A.2d 488 (1987) (purchasers of real estate, insurance);  <u>Commonwealth of Pennsylvania by Creamer v. Monumental Properties, Inc.</u>, 329 A.2d 812, 818-819 (PA Com.

1974) (rental of real property); McClelland v. Hyundai Motor Company America, 851 F.Supp. 680 (E.D.Pa. 1994) (purchase of automobile); Flores v. Shapiro & Kreisman, 246 F.Supp.2d 427, 434 (E.D.Pa. 2002) (PA CPL extended to loans financing the purchases of goods or services for personal use as well as the collection of such debts, citing Smith v. Commercial Banking Corp., 866 F.2d 576, 583 (3rd Cir. 1992)).

However, no state or federal court in Pennsylvania has extended the PA CPL to non-purchasers who suffered a loss as a result of an unfair or deceptive practice. In fact, the court of appeals has explained the Pennsylvania legislature did not

> The statute unambiguously permits only persons who have purchased or leased goods or services to sue. The private cause of action is also limited to unfair or deceptive methods, acts, or practices in the conduct of any "trade or commerce" . . . . Had the Pennsylvania legislature wanted to create a cause of action for those not involved in a sale or lease, it would have done so. The Pennsylvania Supreme Court has never addressed the issue before us. Its only reported decision on the CPL supports the conclusion that a private plaintiff must at least have purchased or leased goods or services. Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3rd Cir. 1992).

See also, Smith, *supra*, 866 F.2d at 583.

Finally, in Balderston v. Medtronic Sofamor Danek, Inc., 285 F.3d 238, 242 (3rd Cir. 2002), a doctor sought to file a PA CPL action to take advantage of a potential six (6) year statute of limitations claiming he was the purchaser of defective medical screws. The court of appeals expressly noted that he declined to file suit until "several years beyond the two year statute of limitations" for a common law fraud claim. 285 F.3d at 240. There, the court of appeals rejected the doctor's PA CPL action because he was not the "purchaser" of a defective medical screw: "[The doctor] is a not a 'purchaser' under the CPL. Therefore, he has no standing to sue." Id. at 242.

Plaintiff's instant attempt to resurrect and revive her long ago time-barred FCRA claims as PA CPL claims ought to be likewise denied.

Plaintiff's contrary suggestion is based solely upon an intermediate appellate case from California, respecting California's "Unfair Business Practices Act." Cisneros v. U.D. Registry, 46 Cal.Rptr.2d 233 (Cal. App. 1995). This action relates to a California statute which is worded entirely differently than the Pennsylvania statute in question instantly. The California statute relates to unfair competition, not solely consumer transactions, like the PA CPL. Moreover, the case has never been cited anywhere in a published (or available unpublished) decision for the proposition that a violation of the FCRA ought to be the basis of a state law unfair trade practices act.

Accordingly, Trans Union is entitled to summary judgment on all claims which occurred prior to July 3, 2000.

**EVEN IF NOT TIME BARRED, THE 1997 DENIAL OCCURRED BEFORE NOTICE TO TRANS UNION:**

Plaintiff's claim that she was denied a Sallie Mae and or Key Bank student loan in the summer of 1997 is barred for many reasons. First, it is time barred under the FCRA. (1681p). Next, Plaintiff concedes the denial(s) occurred before Plaintiff disputed the judgment to Trans Union. (See Plaintiff's Opposition, p. 6) The denial led to her obtaining a copy of her report which is how she first saw the judgment. (Ibid.) Thus, Trans Union was not on notice that the account did not belong to Plaintiff. As the Court of Appeals held in Cushman v. Trans Union Corp., 115 F.3d 220 (3rd Cir. 1997):

> [A] credit reporting agency may initially rely on public court documents, because to require otherwise would be burdensome and inefficient. 115 F.3d at 224 *quoting* Henson v. CSC Credit Servs., 29 F.3d 280, 286-7 (7th Cir. 1994).

As the Court held in Podell v. Citicorp Diners Club, 112 F.3d 98 (2nd Cir. 1997):

> Trans Union was entitled, as a matter of law, to report the information from Podell's creditors regarding his indebtedness at least until it heard from Podell directly. 112 F.3d at 104 (*quotations, brackets omitted*).

As the Declaration of Nancy Cerbus, Vice President of Data Services for Superior Information Services, LLC ("Superior") demonstrates, the information was initially furnished to Superior, and then to Trans Union, by the City of Philadelphia on an automated tape. Declaration of Nancy Cerbus ¶5, attached hereto as Exhibit "A" (herein "Cerbus Decl. ¶__").

Because there was no reason to doubt the accuracy of information furnished by the City of Philadelphia to Superior (and then to Trans Union) prior to Plaintiff's dispute, Trans Union is entitled to summary judgment on all claims which may have arisen before the first dispute in August 1997, and in particular the July 1997 Sallie Mae claim.

With respect to the alleged, but unidentified mortgage and car loan applications, Plaintiff failed, in her prolix fifty two (52) page opposition, to articulate any opposition to Trans Union's motion and failed to identify any cognizable witnesses in her pretrial from any of the still unidentified lenders (or Sallie Mae). Plaintiff references, but fails to present any evidence or case law to support such claims. Plaintiff merely contends: "she did not receive or keep adverse action letters…," and "lost potential credit opportunities." (Opposition, p. 21) The unidentified claims should be dismissed as abandoned or because they lack merit for the reasons more fully set forth in Trans Union's opening Brief. (See discussion of Philbin, Trans Union's Opening Brief, pp. 14-15). The "potential" claims should be dismissed as grossly speculative. That sort of conclusory and speculative assertion does not satisfy Plaintiff's burden on summary judgment because it is *her* burden to demonstrate the elements of her claim. *See* Philbin *supra* and discussion of Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 475 (2nd Cir. 1995); Obabueki

v. Choicepoint, Inc., 236 F.Supp.2d 278 (S.D. NY 2002) *aff'd* 319 F.3d 87 (2nd Cir. 2003), Trans Union's opening brief, pp.16-17.  This is not just in the context of summary judgment.  The pretrial has been filed and no competent witnesses have been identified.

Finally, with respect to the Chase application, Plaintiff has not and cannot explain how she was "harmed" when she withdrew (or even was denied) a credit card which was entirely redundant.[1]  As more fully explained in Trans Union's Opening Brief, the card was redundant because **she already had** a $10,500.00 **Chase** credit card.  (See Trans Union's opening brief. p.4)  As such no harm, actual, emotional or financial can be causally connected to that application.

Significantly, because no FCRA claim can be established based upon such transactions, the events cannot be deemed violations to sustain CPL claims.  Indeed, the only alleged CPL violation is predicated upon alleged violations of the FCRA.  To allow these unsubstantiated claims to *triple* the statute of limitations would unfairly prejudice Trans Union.

**SUPERIOR'S REINVESTIGATION**

Plaintiff makes the outlandish and wholly unsupported claim that Trans Union's reliance upon a public record vendor to reinvestigate disputed information is, in itself, a violation of the FCRA.  Plaintiff's central claim, that Trans Union "never [] contacted the Philadelphia Municipal Court…" (Plaintiff's Opposition, p.2) is wrong.  On the contrary, Trans Union's public record vendor, Superior, actually reinvestigated the disputed information by physically

---

[1] Plaintiff disclosed in discovery only the "denial" letter from Chase. Only *after* Plaintiff was deposed, and Chase was subpoenaed, did it become known to Trans Union that, in fact, Plaintiff withdrew the application before she received the "denial" letter.  Interestingly, Plaintiff did not submit an affidavit at summary judgment, or amendment to deposition testimony to explain that Plaintiff was, in fact, aware that she was "denied" before she withdrew the application.  The only "evidence" Plaintiff cites is deposition testimony from a Chase representative in which Ms. Stout "would assume that she knew, that's why she wanted it withdrawn."  *See* Plaintiff's Opposition, p.20 and Exhibit "L" thereto, p.41.  This 'assumption' is not based on any business records of Chase, and there is no evidence whatsoever that Plaintiff knew she was "denied" when she withdrew the application.  Accordingly, there is absolutely no competent evidence that Plaintiff was denied credit, and only competent evidence she withdrew the application before receipt of the "denial" letter.

going to the Courthouse and looking at the records. Cerbus Decl. ¶¶6-7; Declaration of Nicholas Palmer ¶¶6-8, attached hereto as Exhibit "B" (herein "Palmer Decl. ¶_").

No FCRA case has ever held that a consumer reporting agency cannot use a contractor to gather and reinvestigate public record data. In fact, the use of such vendors is an industry-wide practice. The only evidence of record, the deposition of Stockdale, the Declarations of Cerbus and Palmer, demonstrates that Trans Union follows extensive procedures in selecting, training, and auditing its vendors.[2]

Unlike the plaintiff in Obabueki, *supra*, Plaintiff utterly failed to obtain any evidence whatsoever that Trans Union's procedures in hiring, training, or auditing Superior were inadequate. Absent evidence of a failure of Trans Union's procedures, Plaintiff presents unsupported attorney argument that Trans Union "never contacted the Municipal Court… and does not know whether they were ever contacted by anyone in response to Ms. Lawrence's disputes." Plaintiff's brief, p.4. However, the only **evidence** of record is that Trans Union did ***not*** select the low-cost vendor; Trans Union does not assume accuracy, but subjects the vendor to audits and inspections; and the contractual duty to report accurate information is express and of utmost importance. *See* Stockdale Dep., Cerbus Decl., Palmer Decl.

Contrary to Plaintiff's unfounded assertions, Trans Union's public records vendor, Superior, reinvestigated the disputed judgment by going to the actual courthouse and reviewing the court files and records, **not** the docket. (*See* Plaintiff's Opposition, p. 17) Indeed, as set

---

[2] See Obabueki v. International Bus. Mach. Corp., 145 F.Supp.2d 371, 397-401 (S.D. NY 2001), where the plaintiff demonstrated, through the deposition of Choicepoint, the defendant consumer reporting agency, that at least eight aspects of Choicepoint's procedures created a material issue of fact as to reasonableness, including that Choicepoint selects the low-cost supplier, Choicepoint *"assumes"* the supplier gives accurate information, Choicepoint only verifies the identity of the reported information, not its accuracy, and that third party suppliers' duty to report accurate information is merely *"implied."* 145 F.Supp.2d at 397-398 (emphasis supplied). Based upon the ample evidence which that plaintiff presented, the Court denied Choicepoint's motion for summary judgment and allowed the question of the reasonableness of its procedures to be submitted to a jury. 145 F.Supp.2d at 399-400.

forth in the Palmer Declaration, ¶3, the individual who did the reinvestigation of Plaintiff's 2001 dispute has twenty-three (23) years experience working as a clerk in the Philadelphia Prothonotary's Office. If, as a result of an unfortunate human error an erroneous judgment was verified, it was done **despite** Trans Union's reasonable care, not due to lack of procedures.

**PUNITIVE DAMAGES**

Plaintiff opposes Trans Union's motion for summary judgment on punitive damages on three delineated grounds: First, Trans Union allegedly does not send "all relevant information" regarding the consumer's dispute. (Opposition, p. 40) Second, Trans Union allegedly did not verify with the Municipal Court (*Ibid*.) Third, Trans Union allegedly reported a judgment "it admittedly knows nothing about." (*Id*. at 42)

With respect to the first contention, that Trans Union allegedly failed to send "all relevant information," there is no case or statutory authority which suggests Trans Union needed to send documentation as opposed to a dispute which required Superior to go to the court and verify all available information respecting the judgment. (*See* Stockdale dep.) Further, as more fully described above, Trans Union does not "parrot" the original tape furnished by the City of Philadelphia with the judgment. Instead, Trans Union required Superior to physically go to the Municipal Court, pull the Court file, and review the pleadings and records to verify the accuracy of the judgment. (Cerbus Decl. ¶¶6-7; Palmer Decl. ¶¶6-8.) The procedures require a manual review consistent with the FCRA and relevant caselaw. If, in fact, a "human error" by an extremely experienced verifier occurred in the process of that review, there is absolutely no basis to find a conscious or wilful disregard of Plaintiff's FCRA rights.

Plaintiff last contention is contrary to the testimony of Stockdale, and the Cerbus and Palmer Declarations, which demonstrate that Superior has an excellent track record and is

routinely audited and even subject to challenges from other vendors. (*See* Stockdale Dep.) The fact that Ms. Little was not aware of the accuracy of the judgment in May 2003, almost a year after it was permanently deleted (See Plaintiff's brief, p.13) is not germane to Plaintiff's claims instantly.

Exactly as the Court required in Henson, *supra,* Trans Union did not rely upon judgment dockets to reinvestigate disputed public record information. Trans Union employs a highly qualified vendor, Superior, which in turn employs a Court Administrative Officer at the Philadelphia Prothonotary's Office to physically go to the Municipal Court and verify the actual court documents. Trans Union did not rely on the initial source of the information (a tape provided by the City of Philadelphia), but instead relied upon a review of the accuracy of the **original** source documents. Trans Union was entirely without notice that this vendor inaccurately verified the information. Accordingly, Trans Union is entitled to summary judgment on Plaintiff's punitive damages claims.

Finally, Trans Union submits that Sheffer v. Trans Union, recently decided by Judge Shiller is not germane instantly and is wrongly decided with respect to Trans Union. First, the Court's reliance upon Boris v. Choicepoint Servs., 249 F.Supp.2d 851, 862 (W.D.Ky. 2003) was erroneous. In Boris, Plaintiff presented evidence of the following elements (#): That defendant's report (1) contained erroneous "fire" claims, which should have been "water" claims; Plaintiff disputed that error for times. 249 F.Supp.2d at 862. (2) Defendant finally changed the fire claims to water claims, (3) **but added back the fire claims**. Ibid. (4) Defendant reinserted the erroneous and previously disputed fire claims "despite knowing that CNA [the information furnisher] may have sent [defendant] bad information." Ibid. (5) **After** Plaintiff filed her action, defendant left the erroneous claims on her file for eleven months and (6)

9

reported the claims to insurers causing Plaintiff harm and distress. Ibid. (7) The sole reason the erroneous claims finally came off Plaintiff's report was that the information "was so old it expired." Ibid. Finally, (8) defendant "displayed a generally uncaring attitude at trial" and "throughout the trial, [defendant] made several ill-advised efforts at trial to blame or criticize Plaintiff for her own problems." Id. at 862 and 863.

Except for the existence of disputes, none of the elements **proved** in Boris were **alleged** against Trans Union in Sheffer; there was no deletion and reinsertion, there was no harm after the dispute. Therefore, Sheffer was wrongly decided and contrary to court of appeals authority.

Instantly, the judgment was deleted due to late responses, not inaccuracy; Plaintiff was duly notified when the judgment was verified and reinstated. In Philbin v. Trans Union Corp., 101 F.3d 957, 970 (3rd Cir. 1996), the seminal punitive damages case in this and many other circuits, the court of appeals has held:

> Philbin claims that TUC is liable for a willful violation because he notified it of the error several times and TUC failed to correct it. However, after the first notification, in 1990, TUC did remove the erroneous information for a period of time. * * * There appears to be one instance -in November of 1992 -- when he notified TUC that, despite the earlier correction, the error re-appeared, and TUC failed to correct it. This, however, falls short of evidence of a willful violation.
>
> Its actions do not rise to the level of a "willful misrepresentation or concealment" that justifies finding a willful violation. *Pinner, 805 F.2d at 1263;* cf. *Millstone, 528 F.2d at 834.*

As such, the reinsertion of previously disputed and deleted information **is not** sufficient to demonstrate "wilful misrepresentation or concealment" necessary to establish an FCRA punitive damages claim in this Circuit. (*See also*, Cousin v. Trans Union Corp., 246 F.3d 359 (5th Cir. 2001) *cert den.*122 S.Ct. 346, 151 L.Ed.2d 261)    To the extent that Boris (or Sheffer)

can be viewed to be inconsistent in its ruling on FCRA punitive damages, the case is contrary to binding Court of Appeals authority (Philbin) and should be disregarded.

However, Trans Union respectfully submits that Boris is not inconsistent, but simply decided in the context of completely different facts and in the face of defendant's egregious conduct which started before the lawsuit and continued throughout the trial.

Not surprisingly, Plaintiff did not reference Boris in her brief in opposition to Trans Union's Motion for summary judgment on punitive damages; the case is simply not germane. (See Plaintiffs Opposition, pp. 38-43) (Plaintiff does cite to Boris for an unrelated issue.)

**CONCLUSION**

For all the above reasons and authorities, Defendant Trans Union LLC respectfully moves this Court to enter summary judgment in its favor, and to dismiss Plaintiff's claims with prejudice.

Respectfully Submitted,

_____
BRUCE S. LUCKMAN          (38636)
TIMOTHY P. CREECH         (81728)

SATZBERG, TRICHON,
  KOGAN & WERTHEIMER, P.C.
1818 Market St., 30th Floor
Philadelphia, PA 19103
(215) 575-7600; Fax: (215) 575-7688
bluckman@mstkw.com
tcreech@mstkw.com

*Attorneys for Defendant,*
*Trans Union LLC*

DATED:      August 8, 2003