UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRACE LAWRENCE )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>TRANS UNION, LLC )<br>)<br>and )<br>)<br>CITY OF PHILADELPHIA )<br>)<br>Defendants. )<br>) | Civil Action No. 02-CV-4440 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF GRACE LAWRENCE'S
SUR-REPLY TO DEFENDANT TRANS UNION, LLC'S REPLY
IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Grace Lawrence, through undersigned counsel, submits this Sur-Reply to Defendant Trans Union, LLC's ("TU") Reply is Further Support of Its Motion for Summary Judgment to respond to several arguments and assertions made by TU for the first time in its Reply. As set forth more specifically below, this Court should deny Defendant's Motion on all grounds.

I.   **ARGUMENT**

A.   **This Is Not A Case Against Superior Information Services: TU's Attempt To Pass The Buck Fails**

In its Reply Brief, TU relies upon two new declarations from agents of Superior Information Services ("Superior"), a furnisher of public records who sold to TU judgment information concerning Ms. Lawrence and who, at the direction of TU, purportedly investigated Ms. Lawrence's disputes for $5. Ironically, these declarations do not suggest that TU did not err in reporting a $2,951 judgment <u>against</u> Ms. Lawrence, when that judgment was actually in her

favor. Rather, the Superior declarations indicate that Superior employs the highest standards and provides accurate information regarding public records to TU. (*See* Cerbus Declaration at ¶¶3, 6-8 and Palmer Declaration at ¶¶ 6-8, both of which are attached to TU's Reply Brief). Thus, based on these declarations one may surmise that the obvious mistake of reporting the judgment against Ms. Lawrence, instead of in her favor, was a result of TU's faulty procedures, and not Superior's conduct. This conclusion is especially likely since TU has already admitted that it has no knowledge as to the whether Ms. Lawrence has ever had a judgment against her and has never seen any records concerning this judgment. (*See* Little Dep. in Lawrence at 69-70, which is attached to Plaintiff's Opposition at the end of Exhibit H).

More importantly, however, this is not a case against Superior. Plaintiff does not claim here that Superior owed her some duty that it breached. Rather, Plaintiff claims that TU's owes her the duties of (1) using procedures that assure "maximum possible accuracy" in reporting her credit information (15 U.S.C. § 1681(e)(b)) and (2) investigating her deputes of any alleged inaccuracy on her credit report (15 U.S.C. § 1681i). The face of the FCRA makes clear that both of these duties belong to TU, the "consumer reporting agency." *See* 15 U.S.C. §§ 1681(e)(b) and 1681i. Although TU may be able to hire a third party to do some of its work, it cannot delegate its duties under the FCRA.[1]

---

[1] In a recent Eastern District of California case, TU lost its summary judgment motion arguing the exact same thing that its is arguing here – namely, that it acted reasonably by relying on a third party vendor to verify certain public records information, in that case tax liens. *See Soghomonian v. Unites States, et al.*, No. CV F 99-5773 (E.D. Cal. July 29, 2003) (a courtesy copy is attached hereto as Exhibit A). In denying TU's motion for summary judgment, the *Soghomonian* court found that "[t]here is no FCRA exception to the reinvestigation requirement that automatically excuses a credit reporting agency from liability simply because the agency relies upon some other company to do the very thing the agency is required by law to do – i.e., reinvestigate and verify the status of disputes information." *Id.* at 6 n.3. Moreover, the *Soghomonian* court held that "the caselaw is clear that a credit reporting agency does not act reasonably under the FCRA by deferring entirely to another source of information." *Id.* at 5 (emphasis in original).

Nor is there any doubt in this case that it was TU, and not Superior (or any other party), that was reporting the patently erroneous judgment information against Ms. Lawrence to the credit world for a period of approximately six years. Finally, there is no doubt here that TU (1) received and processed Ms. Lawrence's disputes, (2) chose not to forward to Superior the docket information that Ms. Lawrence provide with her disputes, and (3) misleadingly communicated to Ms. Lawrence that the original source (*i.e.*, the Philadelphia Municipal Court) had confirmed for TU that the judgment was correctly entered against her.

In sum, Plaintiff has placed before this Court sufficient fact to support her claim that TU violated the FCRA. Accordingly, this Court should discount the Superior declarations and TU's attempt to pass the buck. This Court should allow Plaintiff's claims against TU to proceed to trial.[2]

### B. TU's Harping On The Statute Of Limitation Issue Is Only A Desperate And Misleading Attempt To Avoid The Merits

In addition to trying to pass the buck to Superior, in its Reply TU tries to avoid the merits of this case (for the transparent reason that it has no defense on the merits) by misleadingly suggesting that Ms. Lawrence's claims are not timely. For the sake of clarity, Plaintiff must reinforce two simple put important points.

#### 1. The Six-Year Statute Of Limitations Applies To Plaintiff's Pennsylvania CPL Claim Only

First, TU claims that it will be prejudiced if this Court were to apply a "nebulous six year state law" to Plaintiff's "FCRA claim." (TU's Reply at 1). This is simply a desperate attempt to

---

[2] Plaintiff subpoenaed Superior's deposition in this matter on May 1, 2003. Superior responded to Plaintiff on May 20, 2003 that its client TU would coordinate the deposition. TU's counsel, however, has repeatedly procrastinated in producing a Superior representative for deposition despite numerous requests by Plaintiff's counsel. Although TU's counsel have been unable for almost three months to produce such a witness to Plaintiff, they have apparently had no difficulty in getting two Superior representative to prepare declarations in support of TU's motion for summary judgment.

3

convince the Court that Plaintiff is trying to recover for damages dating back to 1997 under the FCRA. That is false.

Plaintiff's FCRA claims seeks damages for only the two years prior to the filing of the lawsuit. Plaintiff has also asserted a Pennsylvania Consumer Protection Law ("CPL") claim, however, which has a six-year statute of limitations. *See* 42 Pa. C.S. § 5527(6); *Gabriel v. O'Hera*, 534 A.2d 488 (Pa. Super. 1987). This CPL claim is properly pled and TU has cited to no authority in support of its contention that Plaintiff may not recover under the CPL under the facts of this case. For that claim alone, a consideration of damages dating back to 1997 would be appropriate. *Id.*

Initially, TU contended that the CPL has only a two-year statute of limitations – but cited only to cases where the CPL was applied in the fraud context. (*See* TU's Brief in Support of its Motion for Summary Judgment at 13). Now, after Plaintiff pointed out to this Court in her Opposition the appropriate six-year statute of limitation for Plaintiff's CPL claim, TU has retracted from that position. Nevertheless, TU would like to avoid the fact that its misreporting of the civil judgment has been causing harm to Plaintiff since 1997 by confusing Plaintiff's CPL claim with her FCRA claim. TU's argument lacks merit and must be rejected.

> **2.  The Two-Year Statute Of Limitations For Plaintiff's FCRA Claims Has Still Not Run, And Will Not Expire Until May 1, 2004**

Second, TU insinuates that none of Plaintiff's claims for damages are cognizable under the FCRA's two-year statute of limitations. This contention also is false.

Plaintiff filed her Complaint in the present matter on July 3, 2003. She has come forward with facts that TU did not remove the judgment from her credit report until July of 2002, that she disputed the judgment with TU in February of 2001 and that she has suffered damage in 2000-

4

2002 (*e.g.* July 2001 Chase credit denial and humiliation and anxiety throughout the entire period of the misreporting of the judgment).  This evidence supports her timely FCRA claim.

Interestingly, although TU harps on the statute of limitations, it fails to cite the *only* authority within the Eastern District of Pennsylvania that squarely addresses how to measure the statute of limitations under the FCRA.  *See Jaramillo v. Experian Information Solutions, Inc.*, 155 F. Supp.2d  356, 359-61 (E.D. Pa. 2001).  In *Jaramillo*, Chief Judge Giles concluded that the two-year FCRA statute of limitations begins to run anew from the date of *each* violation.  He held that "each transmission of the same credit report is a separate and distinct tort to which a new statue of limitation applied."   *See Jaramillo*, 155 F. Supp.2d  at 359-61 (citing *Hyde v. Hibernia*, 861 F.2d  446, 450 (5th Cir. 1988)).  Thus, since TU's own records show that it continued to report the judgment to creditors until at least May of 2002,[3] the FCRA statute of limitations has still not run – and would not expire until May 1, 2004.  TU's contention, therefore, that Plaintiff does not have a timely FCRA claim is without any merit and must be rejected.

    **C.**    **Recent Authority From The Eastern District Of Pennsylvania (*Sheffer v. Experian Information Solutions, Inc., Trans Union, LLC et al.*) Supports Plaintiff's Claim For Punitive Damages**

On July 24, 2003, in *Sheffer*, Judge Berle M. Schiller issued a Memorandum and Order denying a motion for summary judgment filed by Defendant Trans Union, LLC.  *See Sheffer v. Experian Information Solutions, Inc.*, C.A. No. 02-7407, 2003 WL 21710573 (E.D. Pa. Jul 24, 2003).  TU's motion in *Sheffer* presented several of the identical arguments it has asserted in its instant motion regarding its general procedures for reporting credit information and responding

---

[3]    TU's own records of June 24, 2002, show that TU sold to Wells Fargo Financial Plaintiff's credit report on "05/2000."  *See* Exhibit C to Plaintiff's Opposition (attaching 6/24/02 TU credit report at end of that Exhibit).

to disputes received from consumers, as well as the types of damages available under the FCRA. *Sheffer* specifically addresses these issues, citing statutory authority and caselaw.

Importantly, *Sheffer* allowed the plaintiff's punitive damages claim to proceed to trial on the basis of substantially similar deposition testimony from TU's Consumer Relations Manager, Eileen Little, that Plaintiff has placed before this Court in the instant case. (*See* Plaintiff's Opposition at Exhibit H). Given the *Sheffer* Court's disposition of these same legal arguments, in addition to the reasons Ms. Lawrence has present to this Court in her Opposition, Plaintiff submits that this Court should also find that punitive damages are available in this case.

## II.     CONCLUSION

For the reasons stated above, as well as the reasons set forth in Plaintiff's Opposition to Defendant's Motion, Defendant Trans Union LLC's Motion for Summary Judgment should be denied.

>                              Respectfully submitted,
>
>                              **FRANCIS & MAILMAN, P.C.**
>
>
> BY:    _____
>        JAMES A. FRANCIS, ESQUIRE
>        MARK D. MAILMAN, ESQUIRE
>        JOHN SOUMILAS, ESQUIRE
>        Attorneys for Plaintiff
>        Land Title Building, 19th Floor
>        100 South Broad Street
>        Philadelphia, PA 19110
>        (215) 735-8600

Date: August 21, 2003