IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRACE LAWRENCE<br>　　　　　　　Plaintiff,<br>　v.<br>TRANS UNION LLC<br>CITY OF PHILADELPHIA<br>　　　　　　　Defendant. | C.A. NO: 02-CV-4440 |

**TRANS UNION LLC'S SUPPLEMENT
TO SUMMARY JUDGMENT RECORD**

Trans Union LLC ("Trans Union"), by and through its undersigned attorneys, files the following supplement to the summary judgment record:

On October 29, 2003, plaintiff conducted the deposition of Nancy Cerbus, the Vice President of Data Information Services for Superior Information Services, Inc., the entity which provided Trans Union with the disputed judgment against plaintiff, and later reinvestigated the judgment. As more fully set forth below, Ms. Cerbus' responses to plaintiff's inquiries revealed information which bears directly upon Trans Union's motion for summary judgment and weighs heavily against plaintiff's opposition to Trans Union's motion. Because plaintiff subpoenaed Ms. Cerbus and conducted the deposition, plaintiff cannot allege surprise or prejudice in connection with Trans Union's submission of the transcript.[1]

The relevant portions of Ms. Cerbus are as follows:

---

[1] In fact, in support of summary judgment, Trans Union filed a Declaration by Ms. Cerbus. However, Ms. Cerbus deposition testimony provides new information and greater detail respecting some of the information in her Declaration.

### A. The City of Philadelphia Furnished a Tape to Superior Which Included a Judgment Against Plaintiff and Superior Furnished The Information Respecting the Judgment Against Plaintiff to Trans Union

Ms. Cerbus has now testified unequivocally that in 1996, Superior received an electronic tape from the City of Philadelphia which contained a judgment **against** plaintiff:

```
19   Q.    .... What additional
20   documents did [Luckman] ask you for?

21   A.    He asked me for the original
22   judgment that we received from the City
23   from the tape back in 1996. (p. 42)

 8   Q.    What did he ask you for then with
 9   respect to this tape?

10   A.    We received the information from
11   the City, directly from the City, the
12   judgment information.  And he wanted to
13   know if I had that information from 1996
14   on our database.

15   Q.    And when you say "tape," that's
16   an electronic tape?

17   A.    Yes.  (page 43)

 2   Q.    Okay.  How often did you receive
 3   it back in 1996 by mail?

 4   A.    Monthly.

 5   Q.    So it was a monthly electronic
 6   tape with judgments that you put on your
 7   database?

 8   A.    Yes.
                 * * *
13   Q.    What database was that?
```

14   A.   This is our Superior database.

15   Q.   Does that still exist?

16   A.   Yes.

17   Q.   Do you still place judgment
18   information that you receive from the City
19   of Philadelphia on that Superior database?

20   A.   Yes. (page 44)

23   Q.   Are you able to conduct the
24   searches on the database?

1    A.   Yes.

2    Q.   Did you conduct a search for the
3    original information in 1996?

4    A.   Yes.

5    Q.   Did you find it?

6    A.   Yes.

7    Q.   You did find it?

8    A.   Yes.  (pages 44-45)

19   Q.   Based on all of the information
20   we reviewed here today and the information
21   that you've reviewed in your files that we
22   still haven't seen, do you know how it
23   came about that Trans Union reported a
24   $2,951 judgment against Ms. Lawrence on
1    her credit report?

2    A.   Yes.

3    Q.   You do know?

4    A.   Yes.

5    Q.   How did it come about?

```
6    A.    Superior collects the information
7          and provides it to the credit companies.

8    Q.    Okay.

9    A.    So the credit companies would
10         then append it to the consumer credit
11         report based on the information that
12         Superior provides. (pages 44-45, 165-166)(emphasis supplied)
```
(*See* Cerbus Deposition Transcript, Exhibit "A" hereto)[2]

Ms. Cerbus' testimony shatters the foundation of plaintiff's Opposition to Trans Union's Motion for Summary Judgment, to the effect that Trans Union never identified "one single document or record to demonstrate the origin or existence of a judgment against Ms. Lawrence." (Opposition, p. 2, 4 and Sur-Reply, pp. 2-3.) Simply put, Superior, a reliable source of public record information, furnished Trans Union with information that there was a $2,951.00 judgment against plaintiff. Importantly, Plaintiff's Sur-Reply concedes: "the Superior Declarations indicate that Superior employs the highest standards and provides accurate information regarding public records to TU." (See Sur-Reply, p. 2) Ms. Cerbus' testimony likewise debunks plaintiff's "surmise" that the "mistake" must have been that of Trans Union, "and not Superior's conduct." Ibid. Plaintiff's unfounded contention amounts to nothing more than a "metaphysical doubt" that a "mistake" was made by Trans Union (as opposed to Superior) and that that mistake violated the FCRA. Accordingly, Trans Union respectfully submits that Trans Union is entitled to summary judgment as a matter of law, and particularly in connection with plaintiff's punitive damages claims.

---

[2] During the deposition, Plaintiff's counsel made much of the fact that, after the service of plaintiff's subpoena, Ms. Cerbus obtained a copy of the complete court record, but did not produce a copy to plaintiff in response to subpoena. This assertion lacks merit because, in **March** 2003, all parties received a Certified Copy of the Court Records from the City solicitor's office, before the City was dismissed as a party. As such, plaintiff's counsel had (and has had) the complained about records for seven (7) months.

4

**B.   The Document Plaintiff Sent to Trans Union Was Not a "Docket" and Was Not Usable By Superior In The Reinvestigation Process.**

First, despite plaintiff's repeated assertions, the subject document was not the "docket", (Plaintiff's Opposition, p. 4, 7, and 15, Sur-Reply p.2-3), but a screen print from a computer terminal to which neither Superior nor the public has access.   See Cerbus, p. 155

Moreover, when she reviewed the document, Ms. Cerbus found it to be "unique", "odd" and "unusual" because, inter alia, the number of hearings, dispositions and an appeal.   See transcript, pp. 152 -162):

```
16   A.   So I would interpret this as
17        meaning that on this date, 7/31/96
18        something is unique about this case
19        because it doesn't make sense, because it
20        says that the case has been withdrawn and
21        then also it says that there is a judgment
22        for defendant. P. 154
```

Dispositively, Ms. Cerbus testified that the document would not be used by Superior in connection with a reinvestigation:

```
9    A.   I do hear your question.  Now,
10        what you'll need to remember is that when
11   Nicholas [Palmer, investigator] goes to the court, he pulls the
12   original copies, so he's not looking at
13   this.  This is what the people at the
14   court -- they're terminal looks like.

15   Q.   Okay.

16   A.   So he wouldn't be looking at this
17        sheet anyway.

18   Q.   I understand that.  So to answer
19        my question, your employees typically
20        would not be entering data into your
21        system based on this sheet?
```

  22  A.  No.

  23  Q.  They would be looking at the
  24  court certified records to enter the data?

  1  A.  Yes. (Pp. 155-156)(See Exhibit "A")

As such, plaintiff's Opposition to Summary Judgment (and Sur-Reply), based in large part upon Trans Union's "failure" to forward the screen print to Superior is misplaced, and demonstrably irrelevant attorney argument. Superior stated it would not use the document and plaintiff has presented nothing other than attorney argument contending the document should have been sent to Superior. There is no evidence to support the **attorney's** assertions respecting what should have been sent or how it could have been used. The only testimony of record, resulting from Plaintiff's questioning of the only knowledgeable person, is that the document was not needed and would not be used by Superior. Under the circumstances, plaintiff has failed to meet her burden that Trans Union's reinvestigation was unreasonable, much less that Trans Union willfully failed to forward a document where that very recipient has now stated the document was not helpful. (See Opposition, p. 36, 40 and Sur-Reply, pp. 2-3)

               Respectfully Submitted,

               SATZBERG, TRICHON,
                 KOGAN & WERTHEIMER, P.C.

               _____
               MARK E. KOGAN  (10186)
               BRUCE S. LUCKMAN (38636)
               TIMOTHY P. CREECH (81728)
               1818 Market St., 30th Floor
               Philadelphia, PA 19103
               (215) 575-7600; Fax: (215) 575-7688
               *Counsel for Defendant, Trans Union LLC*

DATED:  October 29, 2003