UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRACE LAWRENCE )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>TRANS UNION, LLC )<br>)<br>and )<br>)<br>CITY OF PHILADELPHIA )<br>)<br>Defendants. )<br>) | Civil Action No. 02-CV-4440 |

**PLAINTIFF GRACE LAWRENCE'S RESPONSE TO DEFENDANT TRANS UNION, LLC'S SUPPLEMENT TO ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Grace Lawrence, through undersigned counsel, respectfully submits this response to Defendant Trans Union, LLC's ("TU") Supplement to its Motion for Summary Judgment, which was filed on October 29, 2003.

Apparently determined to get the last word on issues fully briefed months ago, consumer reporting agency TU attempts to buttress its summary judgment motion with recently taken deposition testimony from a third party credit furnisher (Superior Information Services) that it contacted in connection with Plaintiff's multiple disputes of the erroneous judgment that TU reported about her. *See Crane v. Trans Union, LLC*, 2003 WL 22172346 (E.D. Pa. Sept. 16, 2003)(outlining the differences between a consumer reporting agency and a credit furnisher under the FCRA and holding that a consumer reporting agency [TU] that merely parrots information from a credit furnisher is potentially liable for punitive damages); *Sheffer v. Experian Information Solutions et al*, 2003 WL 21710573 (E.D. Pa. July 24, 2003)(same). Ironically, the testimony TU talismanically parades before the Court not only does nothing to

advance the arguments for which TU offers it, it actually strengthens, rather than undermines, Plaintiff's case. Rather, the Cerbus testimony merely reinforces the salient facts of record that Plaintiff has already pointed out—that TU had no reliable basis or documentation upon which to continue reporting a judgment against Plaintiff, that it merely parroted the information of its credit furnisher Superior in response to Plaintiff's multiple disputes, that it never even forwarded the court records Plaintiff provided it to the Superior, and that had it simply looked at the Philadelphia Municipal Court's *actual records*, it would have invariably concluded that Plaintiff never had a judgment against her.

- **Why Didn't Anyone Simply Look At The Municipal Court's Records? Ms. Cerbus' Testimony Underscores The Unreliability Of TU's Source Of Information**

In an effort to justify its patent disregard and reckless abandonment of its duty to independently investigate Plaintiff's disputes regardless of whatever Superior did (*see Crane and Sheffer, supra*), TU strains to read one section of the Cerbus deposition as suggesting that the Municipal Court, and then Superior in turn, actually reported that Ms. Lawrence had a judgment against her. TU's interpretation of the Cerbus testimony is wrong and irrelevant in any event for several reasons.

First, as clearly documented by the certified records from the City of Philadelphia previously appended to Plaintiff's response memorandum, there is no doubt that Plaintiff ever had a judgment against her. *See* Certified Records from the City of Philadelphia, attached as Exhibit B to Plaintiff's response memorandum. Indeed, TU does not contend that Ms. Lawrence ever owed a judgment against her.

Second, despite TU's suggestions otherwise, even Nancy Cerbus does not contend that the court records ever demonstrated a judgment against the Plaintiff:

2

> Q. And would you interpret this particular record to say that there is a judgment against Ms. Lawrence?
>
> Mr. Luckman: Objection.
>
> THE WITNESS: I don't think you can interpret that.

(Cerbus dep. at 156, ll. 14-19, attached as Exhibit A to TU's Supplement)

***

> Q. My question is, looking at this document, would you agree with me that you cannot reasonably conclude that this is a judgment against Ms. Lawrence?
>
> Mr. Luckman: Object to the form.
>
> THE WITNESS: If I look at this document, I would, and our employees or contractors would probably state that there's something odd about this case. *You cannot determine who the judgment is against or if the case is open or if it's been dismissed or withdrawn.*

(Cerbus dep. at 159, l. 24, 160, ll. 1-6.)

***

> Q ….My question nevertheless is, given all of these reasons, do you think it's reasonable for someone to conclude that this is a judgment against Ms. Lawrence?
>
> Mr. Luckman: Object to the form.
>
> THE WITNESS: I don't know if it's reasonable to conclude that.
>
> BY MR. SOUMILAS:
>
> Q. Would you agree with me that nowhere on this [the city record] form does it say that it's a judgment for the plaintiff?
>
> Mr. Luckman: Objection.
> THE WITNESS: It doesn't say that it's a judgment for him, no.

3

(Cerbus dep. at 162, ll.17-24, 163, ll.1-9). Rather than aiding TU, the Cerbus testimony eradicates any question as to whether TU received a record from Superior that inaccurately suggested that Plaintiff had a judgment against her. The best that TU can contend is that Superior provided it with some information from the Municipal Court that Superior considered to be somewhat ambiguous. Plaintiff respectfully asserts to the Court that the City's records speak for themselves, and that had TU actually contacted the City and obtained the records as it had misrepresented to the Plaintiff, or requested that Superior provide it with a copy of the actual records before continuing to report it, it would have quickly determined that the judgment was for Ms. Lawrence. (*See* Plaintiff's TU credit reports dated 11/12/97 and January 23, 1998 asserting that TU investigated Plaintiff's disputes that the judgment was "certified as complete and accurate" by the "Philadelphia County Reco[rds]," attached as Exhibit C to Plaintiff's response memorandum.). As pointed out in Plaintiff's briefing, TU did not do either of these things because as a matter of policy it simply parrots whatever information its credit furnisher reports in violation of the FCRA.

The Cerbus testimony also provides additional corroborative evidence supporting Plaintiff's claim that TU willfully violates the FCRA by failing to forward a consumer's dispute documentation to the credit furnisher reporting the information in violation of FCRA section 1681i(a)(2)(B) (requiring a consumer reporting to provide all relevant information to the credit furnisher). See *Crane*, 2003 WL 22172346, *7 (Judge Dalzell finding that TU's policy of never providing a consumer's documentation to the furnisher created a factual issue that TU knowingly or recklessly violated the FCRA to warrant punitive damages). In addition to the testimony of Ms. Little, Ms. Cerbus testified consistently:

4

> Q. …Based on your review of the all of the information that you've gathered…do you know whether during the dispute process Trans Union forwarded this form to you?
>
> A. No, they wouldn't have.

(Cerbus testimony at 163, ll.19-24).

Further, the Cerbus testimony is directed not to the City of Philadelphia's records, but to Superior's (not a consumer reporting agency regulated by the FCRA and not a defendant in this case) records. The questionable information that TU refers to comes from Superior's own records, not a "tape" from the City of Philadelphia as TU alleges. Ms. Cerbus' testimony makes clear that Superior recycled the original "tape," and that the tape no longer exists. (*See* Cerbus Dep. at 47, attached to TU's 10-29-03 Supplement).

Stretching logic and attempting to divert the Court from its non-delegable investigation duties under the FCRA, TU incorrectly asserts that because Ms. Cerbus testified that Superior's internal records supposedly indicated a judgment against Ms. Lawrence in 1996, TU is somehow free of liability in this case. No cogent reading of Ms. Cerbus' testimony, however, can lead to that conclusion. Nor did Ms. Cerbus' testimony undermine Plaintiff's contention that after four years of disputes to TU (not Superior), and even after a year of litigating this matter, TU's representatives have *never* seen a single record demonstrating the origin or existence of a judgment against Ms. Lawrence. (*See* Plaintiff's Opposition Brief of 7-10-03 at 9-14).

Far from showing that TU employed procedures that assured "maximum possible accuracy" (*see* FCRA Section 1681e(b)) in its credit reporting, therefore, Ms. Cerbus' testimony simply reinforces the fact that TU failed to conduct any reasonable investigation in response to Plaintiff's disputes.

In sum, Ms. Cerbus' testimony only reinforces the fact that TU did not properly investigate Plaintiff's disputes, either during the period of four years when Ms. Lawrence was disputing the judgment directly with TU or the period of one year since this lawsuit was filed. Even if one were to assume that Ms. Cerbus' testimony is consistent with the records that her company purportedly has, this does not mean that TU conducted proper investigations under FCRA section 1681i.  If information exists on Superior's database that a judgment was entered against Ms. Lawrence, that information was obviously wrong.  Certified court records from the Municipal Court of Philadelphia have shown in this case that the judgment was actually in Ms. Lawrence's favor, and not against her.  Any reasonable investigation should have revealed this obvious fact to TU at some point in between 1997 and 2001, when it continuously verified the judgment as accurately being reported against Ms. Lawrence.

For the reasons stated above, as well as the reasons set forth in Plaintiff's Opposition to Defendant's Motion and Sur-Reply Brief, Defendant Trans Union LLC's Motion for Summary Judgment should be denied in its entirety.

    Respectfully submitted,

    **FRANCIS & MAILMAN, P.C.**

BY: _____
JAMES A. FRANCIS, ESQUIRE
MARK D. MAILMAN, ESQUIRE
JOHN SOUMILAS, ESQUIRE
Attorneys for Plaintiff
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

Date: November 7, 2003