IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Grace Lawrence | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | No. 02-4440 |
| | : | |
| Trans Union LLC | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM AND ORDER**

**Anita B. Brody, J.**                                                                              **December 11, 2003**

On July 3, 2002, plaintiff Grace Lawrence ("Lawrence") filed this action against defendant Trans Union ("TU"), a credit reporting agency, for damages sustained when TU allegedly published false information on her credit report. Defendant has filed a motion for summary judgment.[1] For the reasons discussed below, the motion is denied in part and granted in part.

Factual Background

In 1996, Lawrence won a small claims lawsuit in the Municipal Court of Philadelphia and had a judgment entered in her favor in the amount of $2,951.[2] Although the judgment was in

---

[1]The court has subject matter jurisdiction over this case based on the existence of a federal question.

[2]Because defendant moves for summary judgment, the facts are set forth in the light most favorable to plaintiff. See Kornegay v. Cottingham, 120 F.3d 392, 395 (3d Cir. 1997).

Lawrence's favor, in 1997 TU began mistakenly reporting this judgment against her. In late 1997, Lawrence was denied college loans for her daughter's education by Sallie May and Key Bank. Both informed Lawrence that the application had been denied because TU had reported an unpaid judgment against her. Pl's Br. Opp'n Def's Mot. Summ. J., Ex. D.

Over the next six years, Lawrence made several efforts to have this erroneous judgment deleted from her credit report. Lawrence Dep. at 10-11. Between 1997 and 1998, TU actually deleted the false judgment from Lawrence's report several times, only to reassert it. Pl's Br. Opp'n Def's Mot. Summ. J., Ex. E. In February 2001, Lawrence re-issued her request by letter to TU that it again remove the erroneous judgment against her. Lawrence Dep. at 47. Enclosed with the letter, plaintiff included copies of the Municipal Court docket in her case reflecting that the judgment was in her favor. TU again failed to correct the information on Lawrence's credit report, refusing to rely on the docket because it was not a "stamped" document. Little Dep. at 26-27. TU made no effort to procure a stamped docket from the Municipal Court, nor did it inform Lawrence that the docket she provided was insufficient. TU simply sent plaintiff letters informing her that the judgment had been verified as complete and accurate. Pl's Br. Opp'n Def's Mot. Summ. J., Ex. I. On August 2, 2001, Lawrence was denied a credit card from Chase because of the misreported judgment.[3] Id. at Ex. K. In addition to the Chase credit card denial, other creditors offered her interest rates higher than those a consumer with excellent credit

---

[3]TU claims that Lawrence withdrew her application for this credit card before her application was processed and that Lawrence therefore cannot allege that she was denied a credit card from Chase. However, Lawrence's statement of facts, which are supported by the deposition testimony of Donna Stout, explain that Lawrence withdrew her application after discovering that it would be denied because of defendant's erroneous report. Pl's Br. Opp'n Def's Mot. Summ. J. at 20.

should have gotten. Lawrence Dep. at 71-72.  Between August of 2000 and March of 2001, many of Lawrence's creditors, including Sears, Chase, Cenlar Mortgage, Universal Bank and Strawbridges conducted account reviews of her credit report. Pl's Br. Opp'n Def's Mot. Summ. J., Ex. M.  In addition to the damage to her credit, Lawrence maintains that she has suffered embarrassment, humiliation, emotional distress, anxiety, frustration and damage to her reputation as a result of defendant's publication of the erroneous judgment to third parties.

Defendant TU contracts with a vendor, Superior Information Services ("Superior") to compile and furnish judgments and liens.  Superior's contract with TU requires Superior to verify disputed information by physically visiting the relevant courthouse and retrieving the information.  Superior charges TU approximately five dollars per investigation.  TU itself never contacted the Philadelphia Municipal Court Records Department to verify Lawrence's judgment, nor is it aware of whether Superior ever sought this information.  TU's practice in addressing consumers' disputes over credit reports is to simply adopt the conclusion of Superior.[4]  In fact, TU still has not independently verified the accuracy of the judgment reported against Lawrence. Little Dep. at 69-70.

Lawrence claims (1) Violation of sections 1681e(b) and 1681i(a) of the Fair Credit Reporting Act (FCRA); (2) Defamation; (3) Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201.1 et seq. ("PA CPL"); (4) Negligence; and (5) Invasion of Privacy.

Discussion

---

[4] Lawrence reports that Superior has refused to abide by the subpoena served upon it. Pl's Br. Opp'n Def's Mot. Summ. J. at 11.  The details of what Superior did or failed to do in investigating Lawrence's disputes are therefore unknown.

TU argues in support of its motion for summary judgment that: (1) recovery is barred by the statute of limitations, (2) there is insufficient evidence to support plaintiff's claims under sections 1681e(b) and 1681i of the FCRA, (3) the punitive damages claims fail because plaintiff has not proven willfulness, (4) the common law claims fail because of TU's qualified immunity, and (5) Lawrence's claims under the PA CPL fail because they are preempted by the FCRA, or in the alternative that Lawrence has no claim under the PA CPL.  "Summary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law."  Kornegay v. Cottingham, 120 F.3d 392, 395 (3d Cir. 1997).  I will address each argument in turn.

*Statute of Limitations*

TU seeks dismissal of both of Lawrence's claims brought under the FCRA as violating the applicable two year statute of limitations.  Lawrence filed this lawsuit on July 3, 2002 and therefore TU contends that all claims arising before July 3, 2000 are time-barred.  "An action to enforce any liability under [the FCRA] may be brought. . . within two years from the date on which the liability arises." 15 U.S.C. § 1681p.  "The date on which liability arises depends on which provision allegedly was violated." Acton v. Bank One Corp., 2003 WL 22807727 at *2 (D.Ariz. Nov. 7, 2003).

Lawrence's first claim under the FCRA is that TU violated 15 U.S.C. § 1681e(b).[5]

---

[5] 15 U.S.C. § 1681e(b) provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

Liability arises under § 1681e(b) when the consumer reporting agency issues an inaccurate consumer report. Id. Each transmission of the same credit report is a separate and distinct tort to which a separate statute of limitations applies. Jaramillo v. Experian Info. Solutions, Inc., 155 F.Supp. 2d 356, 359-60 (E.D.Pa. 2001).

TU first began misreporting Lawrence's judgment in 1997. TU's false transmissions of Lawrence's credit reports which occurred prior to July 3, 2000 are time-barred. However, Lawrence has also provided evidence of erroneous transmissions of the credit report during the two years preceding the filing of this suit. TU's erroneous report of her credit status to Chase resulted in Lawrence's rejection for a Chase credit card on August 2, 2001. TU also falsely reported Lawrence's credit status to several of Lawrence's creditors, including Sears, Chase, Cenlar Mortgage, Universal Bank and Strawbridges, when these companies conducted account reviews of plaintiff's credit report in the two years preceding the filing of this suit. Lawrence has also provided evidence that TU's false transmissions during this time period resulted in her receiving higher interest rates than she would have been eligible for if the judgment had not been mis-reported. Lawrence's claims based on these transmissions which occurred after July 3, 2000 are not time-barred.

Plaintiff's second FCRA claim is brought under § 1681i.[6] "Liability arises under 1681i when the consumer reporting agency allegedly violates its duty under the FCRA to

---

[6] 15 U.S.C. § 1681i(a) provides: "If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file . .. before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer."

reinvestigate." Briley v. Burns Int'l. Safetohire.com, 2003 U.S. App. LEXIS 20966 at *11 (6th Cir. Oct. 14, 2003). Pursuant to 15 U.S.C. § 1681i(a)(1)(a), the agency must reinvestigate the disputed item "before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer." Therefore, liability arises under 1681i thirty days after the consumer reporting agency receives notice of the disputed item from the consumer. Acton at *2. Lawrence wrote to TU in February 2001 about the false information on her credit report. Liability therefore arose for TU's alleged failure to reinvestigate this dispute in March 2001, putting this claim well within the applicable two year statute of limitations.[7]

TU also argues that Lawrence's state law claims are barred by the applicable statutes of limitations. The statute of limitations for a claim of invasion of privacy or defamation is one year. 42 PA. CONS. STAT. § 5523. The statute of limitations for negligence is two years. 42 PA. CONS. STAT. § 5524(7). The erroneous transmission of Lawrence's consumer report in August 2001, less than one year before Lawrence filed this suit, suffices to bring Lawrence's common law claims within the applicable statutes of limitations.

***Substantive Claims under the FCRA***

### First FCRA claim: 15 U.S.C. § 1681e(b)

---

[7]The statute of limitations for FRCA claims is found in 15 U.S.C. § 1681p. The general rule is that an action may be brought within two years after liability arises. § 1681p also provides a discovery rule which is not applicable in this case: "[W]here a defendant has materially and willfully misrepresented any information required. . . to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual. . . the action may be brought at any time within two years after discovery by the individual of the misrepresentation." 15 U.S.C. § 1681p.

TU argues that Lawrence cannot establish a claim under 15 U.S.C. § 1681e(b).[8]  Under this provision,

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b).  Plaintiff has alleged both willful and negligent noncompliance with § 1681e(b).[9]  To establish negligent noncompliance with this section by the credit agency, a plaintiff must show that: (1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry.  Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3d Cir. 1996).

TU argues that Lawrence's claim under § 1681e(b) should fail because Lawrence cannot establish prong number four.  There is evidence, however, that Lawrence's Chase credit card application was denied because of the erroneous information transmitted by defendant within the applicable time period.  Lawrence also testified in her deposition that creditors offered her higher interest rates than those offered to consumers with excellent credit, and that she lost credit opportunities by not applying for credit because of her fear that the erroneous judgment would

---

[8]Plaintiff's standing to bring these claims under the FCRA is provided by 15 U.S.C. § 1681p: "An action to enforce any liability [under the FCRA] may be brought in any appropriate United States district court without regard to the amount in controversy."

[9]The FCRA allows plaintiffs to sue under § 1681n (willful noncompliance with an FCRA requirement) and § 1681o (negligent noncompliance with an FCRA requirement).  I discuss TU's objection to Lawrence's claim of willful noncompliance in this opinion's section about punitive damages, infra p. 10.

foreclose approval. Pl's Br. Opp'n Def's Mot. Summ. J. at 21. Lawrence also claims to have suffered embarrassment, humiliation, emotional distress, anxiety, frustration, and damage to her reputation as a result of TU's publication of the derogatory judgment. Id.

The loss of credit opportunities constitutes compensable harm under the FCRA. See Philbin, 101 F.3d 957 (treating plaintiff's loss of many credit opportunities as his "injuries" in a § 1681e(b) analysis.) It is not necessary for plaintiff to state her emotional damages of humiliation and embarrassment with a great degree of particularity. Philbin, 101 F.3d at 963 n.3; see also Crane v. Trans Union, LLC, 2003 WL 22172346 (E.D.Pa. Sept. 16, 2003) (relying on Philbin to find that plaintiff's humiliation and embarrassment are cognizable injuries under 1681e(b)); Sheffer v. Experian, 2003 WL 21710573 (E.D.Pa. July 24, 2003) (denying summary judgment to Trans Union in a similar case, and finding that "[a]t the very least, Plaintiff may be entitled to damages for the emotional distress he may have suffered in connection with his efforts to correct the error in his Trans Union consumer file and in obtaining credit from a jewelry store around the time he was attempting to have the error corrected.") Lawrence has presented sufficient harm to proceed with her claim under § 1681e(b).

Second FCRA claim: 15 U.S.C. § 1681i(a)

TU also alleges that Lawrence has failed to prove her claim under 15 U.S.C. § 1681i(a). This section of the FCRA states that:

> If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period beginning on the date on which the agency receives the notice of the

dispute from the consumer.

TU contends that Lawrence cannot establish a claim under § 1681i(a) because (1) Lawrence cannot demonstrate harm in connection with her February 2001 dispute; and (2) there is no evidence that TU failed to reasonably reinvestigate Lawrence's dispute.

The Third Circuit interpreted § 1681i(a) in Cushman v. Trans Union Corp., 115 F.3d 220, 225-6 (3d Cir. 1997):

> [I]n order to fulfill its obligation under § 1681i(a) 'a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information'. Henson, 29 F.3d at 287. We further hold that 'whether the credit reporting agency has a duty to go beyond the original source will depend' on a number of factors. Id. One of these is 'whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable.' Id. A second factor is 'the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer.' Id. Whatever considerations exist, it is for 'the trier of fact [to] weigh the[se] factors in deciding whether [the defendant] violated the provisions of 1681i.' Id.

I have already determined that Lawrence's claim of harm arising from the February 2001 denial of the Chase credit card is sufficient to survive summary judgment. As for the second argument, Lawrence has asserted that she made many attempts to correct the erroneous information on her credit report. TU, without providing Lawrence with any explanation, rejected the documentation Lawrence provided to clear her record. TU never forwarded the docket to Superior and simply parroted the information Superior provided despite Lawrence's many attempts to correct the error. Finally, TU still has not verified the actual disposition of Lawrence's 1996 judgment.

Both of the noted examples in Cushman support Lawrence's position that a claim under § 1681i(a) is cognizable. Lawrence supplied TU with more than adequate notice that Superior's report was unreliable. As Lawrence points out, TU's costs in investigating this error should have been no more than the cost of a phone call or a confirmation of the Municipal Court judgment. This is a sufficient showing of the credit agency's failure to reinvestigate as required by § 1681i(a). TU is not entitled to summary judgment on Lawrence's claim under § 1681i(a).

***Punitive Damages***

TU argues that Lawrence cannot sustain a claim for punitive damages under sections 1681e(b) and 1681i(a) of the FCRA because she has no evidence to support a claim that TU willfully violated the FCRA.

> Any person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of. . . such amount of punitive damages as the court may allow.

15 U.S.C. § 1681n. "[T]o justify an award of punitive damages, a defendant's actions must be on the same order as willful concealments or misrepresentations. If [plaintiff] can prove. . . [t]hat [defendant] adopted its reinvestigation policy either knowing that policy to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy contravened those rights, she may be awarded punitive damages." Cushman, 115 F.3d at 227.

Lawrence alleges three acts of willful conduct: (1) that TU did not forward documentation to Superior that would have corrected Lawrence's credit report; (2) that TU knowingly misled Lawrence into believing it was verifying the accuracy of the judgment against

10

her, when in fact TU never contacted the Municipal Court; and (3) that TU acted recklessly in purchasing and publishing a civil judgment it knew nothing about. Pl's Br. Opp'n Def's Mot. Summ. J. at 38-43.  This defendant made the same argument objecting to punitive damages in a similar case captioned Crane v. Trans Union, LLC, 2003 WL 22172346 (E.D.Pa. Sept. 16, 2003). In Crane, Judge Dalzell explained that defendant's failure to transmit plaintiff's supplemental documentation to a creditor and defendant's practice of merely parroting information without verifying its accuracy, could be found by a reasonable jury to be knowing or reckless violations of the FCRA. Crane, 2003 WL 22172346.  Plaintiff in the present case objects to the same practices by the same defendant.  The claim for punitive damages is not appropriate for summary judgment.

*Qualified Immunity*

TU argues that it is entitled to qualified immunity on Lawrence's common law claims under 15 U.S.C. §1681h(e), which reads:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

Lawrence must therefore produce evidence sufficient to justify a finding of willfulness by TU in order to pursue the common law claims of defamation, invasion of privacy, and negligence.  In Cushman, the Third Circuit "assume[d] without deciding" that the requirements

for a showing of willfulness on punitive damages under § 1681n are identical to a showing of willfulness under § 1681h(e). Cushman, 115 F.3d at 229. Other cases in this district that have decided claims under both § 1681n and § 1681h(e) have used the same standard for both claims. See O'Connor v. Trans Union Corp., 1999 U.S. Dist. LEXIS 14917 (E.D.Pa. Sept. 28, 1999); Crane, 2003 WL 22172346. Because I have decided that Lawrence has made a sufficient showing of willfulness to survive summary judgment on her claim under § 1681n, I find that TU does not enjoy qualified immunity under § 1681h(e) on Lawrence's common law claims.

*Plaintiff's Claim under the PA CPL*

TU argues that Lawrence's PA CPL claim fails because it is preempted by the FCRA, or if not preempted that Lawrence fails to state a claim under the PA CPL itself. As for the preemption argument, TU argues that because the FCRA does not create a state law claim or other private right of action, such actions are precluded by federal law. In a recent decision of this court, Judge Stewart Dalzell ruled that a similar claim under the PA CPL was not preempted by the FCRA because "violations of the FCRA are among the unfair or deceptive acts or practices the CPL forbids." Crane, 2003 WL 22172346. For the purposes of this opinion I will adopt Judge Dalzell's ruling and proceed to address defendant's second contention, that Lawrence fails to state a claim under the PA CPL.

I have found no decision on the issue of whether the PA CPL applies to consumer reporting agencies. The PA CPL permits a private action by "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property. . ." 73 PA. CONS. STAT § 201-9.2. The Third Circuit has recognized that the statute "unambiguously permits only persons who have purchased or

12

leased goods or services to sue." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992); Balderston v. Medtronic Sofamor Danek, Inc., 285 F.3d 238, 242 (3d Cir. 2002); see also Taylor v. Nelson, 2003 U.S. Dist. LEXIS 6796 at *9 (E.D.Pa. March 27, 2003).

In Katz, plaintiff was an injured automobile passenger who sued the driver's insurance carrier for concealing excess liability coverage owned by the driver. Katz, 972 F.2d at 55. Plaintiff himself had no prior relationship with defendant insurance carrier. The Third Circuit declined to extend the PA CPL to cover relationships beyond those expressly stated in the law, noting, "[h]ad the Pennsylvania legislature wanted to create a cause of action for those not involved in a sale or lease, it would have done so." Id. at 55. The court in Katz noted that the Pennsylvania Supreme Court has never addressed the issue of whether claims under the PA CPL are permitted against defendants who did not sell or lease goods or services to the plaintiff. However, Katz pointed to the Pennsylvania Supreme Court decision of Commonwealth v. Monumental Props, Inc., 329 A.2d 812 (Pa. 1974), in which the court commented that the PA CPL "attempts to place on more equal terms seller and consumer." Commonwealth v. Monumental Props, Inc., 329 A.2d 812, 816 (Pa. 1974).

Katz also noted that the Superior Court of Pennsylvania spoke to this issue in Valley Forge Towers South Condominium v. Ron-Ike Foam Insulators, Inc., 574 A.2d 641 (1990). The Superior Court determined in Valley Forge that the absence of technical privity between plaintiff and defendant did not preclude liability under the PA CPL. Plaintiff, a condominium association, was determined to be a "purchaser" from defendant Mameco International Inc. ("Mameco") when plaintiff contracted with defendant Ron-Ike Foam Insulators, Inc. ("Ron-Ike"), and Ron-Ike specified in the contract that it would install a roofing membrane manufactured by

Mameco. Id. at 647.  The Superior court found that the fact that Mameco had issued its 10-year warranty directly to plaintiff, and that the contract between plaintiff and Ron-Ike included a provision that material be purchased from Mameco, gave Mameco unequivocal notice that plaintiff was the actual intended beneficiary of its warranty. Id. at 664.  Plaintiff was therefore permitted to pursue a claim against Mameco under the PA CPL.  Katz reconciled this Superior Court precedent with its decision by explaining that "[a]lthough Valley Forge Towers held that strict privity is not always an element of the private cause of action, there is no indication that the court would have extended the private cause of action to a plaintiff lacking any commercial dealings with the defendant." Katz, 972 F.2d at 57.  Thus, the extension of the right to bring a claim under the PA CPL when plaintiff is not a direct purchaser or lessor of the defendant is limited.

The Third Circuit again addressed this issue in Balderston v. Medtronic Sofamor Danek, Inc., 285 F.3d 238 (3d Cir. 2002).  In Balderston, plaintiff was a physician who used defendant's pedicle screws in performing spinal fusion surgeries. 285 F.3d at 239.  Plaintiff argued that he acted as his patients' "purchasing agent," though the patients were the actual purchasers of the screws. Id. at 240.  Plaintiff sued under the PA CPL, claiming that the defendant manufacturer, Medtronic, had concealed and misrepresented the Food and Drug Administration approval status of the pedicle screws, exposing plaintiff to liability for not receiving true informed consent from patients before using defendant's screws. Id.  The Third Circuit, relying on Katz, found that plaintiff had no standing to sue because he was not the "purchaser" of the screws. Id. at 242.

In the present case, Lawrence's argument that the plain language of the FCRA does not *forbid* a simultaneous claim under the PA CPL is inconsequential in light of the PA CPL's own

14

language and the case law interpreting it. It is undisputed that Lawrence did not purchase or lease any goods from defendant. Lawrence has not even attempted to argue that TU is a purchaser or lessor, as required for standing under the PA CPL. I now hold that consumers cannot sue consumer reporting agencies under the PA CPL who have not sold or leased goods to them.[10] TU is therefore awarded summary judgment on Lawrence's claim under the PA CPL.

---

[10]Defendant also raised a statute of limitations challenge against this claim. Because I find that plaintiff's claim against defendant is not cognizable under the PA CPL, I need not decide which statute of limitations would have applied to the claim.

**ORDER**

_____**AND NOW**, this _____ day of December, 2003, defendant's motion for summary judgment (Docket #20) is **GRANTED** in part and **DENIED** in part. Defendant's motion for summary judgment on plaintiff's claims under the Fair Credit Reporting Act and claims of defamation, negligence, and invasion of privacy is **DENIED**. Defendant's motion for summary judgment on plaintiff's claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201.1 et seq. is **GRANTED**._____

_____

ANITA B. BRODY, J.

Copies **FAXED** on _____ to:    Copies **MAILED** on _____ to:

O:\JUDGE\OPINIONS\Lawrence summary judgment opinion.wpd