IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRACE LAWRENCE<br><br>      Plaintiff,<br><br> v.<br><br>TRANS UNION LLC<br>CITY OF PHILADELPHIA<br><br>      Defendants. | C.A. NO: 02-CV-4440 |

**TRANS UNION LLC'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR RECONSIDERATION
OF DECEMBER 11, 2003 ORDER ON SUMMARY JUDGMENT**

  Trans Union LLC ("Trans Union"), by and through its undersigned attorneys, states as follows in support of its Motion for Reconsideration with respect to the Court's December 11, 2003 Order, particularly as it relates to punitive damages and the FCRA qualified immunity:

**I. INTRODUCTION**

  By Order dated December 11, 2003, this Court denied, in part, Trans Union's Motion for Summary Judgment. A crucial issue in the case, and the Order, concerns the reporting and reinvestigation of the subject judgment by Trans Union's public record vendor, Superior Information Services, Inc. ("Superior"). Superior originally reported the judgment to Trans Union and later reinvestigated plaintiff's disputes. Initially, Trans Union submitted Declarations of cognizant Superior employees. Superior was not deposed until October 29, 2003, when plaintiff deposed Nancy Cerbus, the Vice President of Superior. Trans Union promptly moved to to supplement the summary judgment record with the Cerbus' deposition. On November 24, 2003, this Court granted Trans Union's Motion to Supplement over plaintiff's objection. (See

Dkt. #40)  Unfortunately, the Court's Order, at page 3, footnote 4, erroneously and mistakenly states:

> Lawrence reports that Superior has refused to abide by the subpoena served upon it.  (citation omitted)  The details of what Superior did or failed to do in investigating Lawrence's disputes are therefore unknown.

Trans Union moves instantly for reconsideration of the Court's December 11, 2003 Order because, it is respectfully submitted, the Court overlooked the crucial information and testimony contained in the Cerbus Deposition.[1]  Trans Union moves for reconsideration of the Court's Order on punitive damages and FCRA qualified immunity because the Cerbus Deposition demonstrates conclusively that the documentation Lawrence submitted to Trans Union was not germane and that Trans Union (through Superior) did in fact reinvestigate plaintiff's dispute and not mislead her abut about the reinvestigation.  (See Order, pp. 10-11)

In particular, Ms. Cerbus testified that:  1) The City of Philadelphia did, in fact, furnish a tape to Superior which included a judgment against plaintiff; 2) Superior in turn furnished the information respecting the judgment against plaintiff to Trans Union; 3)  the document which plaintiff sent to Trans Union with her dispute was not an official court record, but an "odd" and "ambiguous" internal municipal court computer terminal print-out which would not be used by Superior because Superior is required to conduct its reinvestigations with actual records, not computer terminal print-outs.  Importantly, Cerbus' testimony that the document plaintiff submitted was not useful or useable renders the decision in Crane v. Trans Union, 2003 WL 22172346 (E.D.Pa. September 16, 2003) entirely inapposite with respect to a knowing or reckless FCRA violation.  (See December 11, 2003 Order, p. 11)

---

[1]     The entire Cerbus deposition was attached to Trans Union's motion to supplement.  Docket #37.  For the Court's convenience, the relevant portions of the Cerbus deposition are attached hereto as Exhibit "A."

II.   ARGUMENT

    A.   **The Document Plaintiff Sent to Trans Union Was Not a "Docket" and Was Not Usable By Superior In The Reinvestigation Process.**

Despite plaintiff's repeated assertions, the subject document was **not** the "*docket*" or any other official court record. (Plaintiff's Opposition, pp. 4, 7, 15, Sur-Reply p.2-3). Instead, it was an internal screen print from a computer terminal to which neither Superior nor the public has access. (*See* Exhibit "A" p. 155.) Nor was the document a "form" used by the municipal court, but instead apparently a print of a screen on which notes and records of events are kept by unknown employees.

Moreover, when she reviewed the document, Ms. Cerbus found it and its content to be "unique", "odd" and "unusual" because, *inter alia*, the number of hearings, dispositions and an appeal. See transcript, pp. 152 -162):

```
16   A.   So I would interpret this as
17        meaning that on this date, 7/31/96
18        something is unique about this case
19        because it doesn't make sense, because it
20        says that the case has been withdrawn and
21        then also it says that there is a judgment
22        for defendant. (Exhibit "A" p.154)
```

Dispositively, Ms. Cerbus testified that the document would not be used by Superior in connection with a reinvestigation:

```
9    A.   I do hear your question.  Now,
10        what you'll need to remember is that when
11   Nicholas [Palmer, investigator] goes to the court, he pulls the
12    original copies, so he's not looking at
13    this.  This is what the people at the
14    court -- they're terminal looks like.

15   Q.   Okay.
```

3

```
16    A.    So he wouldn't be looking at this
17    sheet anyway.

18    Q.    I understand that.  So to answer
19    my question, your employees typically
20    would not be entering data into your
21    system based on this sheet?

22    A.    No.

23    Q.    **They would be looking at the**
24    **court certified records to enter the data?**

1     A.    Yes.  (Exhibit "A" pp. 155-156 (emphasis supplied))
```

It is respectfully submitted that the Court's Order on willfulness, based upon Trans Union's "failure" to forward the screen print to Superior, is contrary to the record evidence from the only knowledgeable witness on the subject. Further, Plaintiff's assertions insisting the document should have been forwarded are demonstrably irrelevant attorney argument. Superior stated it would not use the document and plaintiff presented nothing other than attorney argument contending the document should have been sent to Superior. The only testimony of record, resulting from Plaintiff's questioning of the only knowledgeable person, is that the document was not needed and would not be used by Superior. Based upon Cerbus' testimony, (supplementing the summary judgment record), plaintiff failed to meet her burden that Trans Union's reinvestigation was unreasonable, much less that Trans Union willfully failed to forward a document where that very recipient has now stated the document was not helpful. (See Order, p. 11 and Plaintiff's Original Opposition, p. 36, 40 and Sur-Reply, pp. 2-3)

The FCRA does *not* require documents to be forwarded in connection with reinvestigations. Crane stands as the sole case suggesting such a requirement. Under the circumstances here, where the document has been determined to be unusable by the entity

conducting the reinvestigation, Trans Union submits the Crane requirement is not reasonable or germane, particularly for purposes of considering willfulness or a reckless FCRA violation. *See* §1681n, which allows a private cause of action for punitive damages against "[a]ny person who willfully fails to comply with any requirement imposed under this title ***with respect to any consumer***…" Even if the FCRA did require Trans Union to send the computer print-out to Superior (which Trans Union maintains it did not), this document would not have in any way altered the outcome of the reinvestigation.

In addition, the claim of "parroting" is not germane here, because Trans Union's public records vendor went to the source and reviewed the court file. (*See* Declaration of Nicholas Palmer.[2]) Mr. Palmer is also an employee of the court system with over twenty (20) years experience. This was not a circumstance where a reinvestigation relied upon the automated response of a creditor.

Finally, the Cerbus testimony cited above confirms that Superior, for Trans Union, in fact, goes to the courthouse source to reinvestigate disputes. (Exhibit "A" pp. 155-156) Accordingly, Trans Union did not "mislead" plaintiff with respect to the conduct of the reinvestigation.

### B. The City of Philadelphia Furnished a Tape to Superior Which Included a Judgment Against Plaintiff and Superior Furnished The Information Respecting the Judgment Against Plaintiff to Trans Union

Ms. Cerbus testified unequivocally that in 1996, Superior received an electronic tape from the City of Philadelphia which contained a judgment **against** plaintiff:

```
19   Q.   . . . . What additional
20        documents did [Luckman] ask you for?
```

---

[2] This document was attached to Trans Union's Reply to Plaintiff's Opposition to Motion for Summary Judgment as Exhibit "B." (Docket #29.) For the Court's convenience, it is attached again hereto as Exhibit "B."

21   A.   He asked me for the original
22   judgment that we received from the City
23   from the tape back in 1996. (p. 42)

8   Q.   What did he ask you for then with
9   respect to this tape?

10   A.   We received the information from
11   the City, directly from the City, the
12   judgment information. And he wanted to
13   know if I had that information from 1996
14   on our database.

15   Q.   And when you say "tape," that's
16   an electronic tape?

17   A.   Yes. (page 43)

2   Q.   Okay. How often did you receive
3   it back in 1996 by mail?

4   A.   Monthly.

5   Q.   So it was a monthly electronic
6   tape with judgments that you put on your
7   database?

8   A.   Yes.

\* \* \*

13   Q.   What database was that?

14   A.   This is our Superior database.

15   Q.   Does that still exist?

16   A.   Yes.

17   Q.   Do you still place judgment
18   information that you receive from the City
19   of Philadelphia on that Superior database?

20   A.   Yes. (page 44)

23  Q.  Are you able to conduct the
24  searches on the database?

1   A.  Yes.

2   Q.  Did you conduct a search for the
3   original information in 1996?

4   A.  Yes.

5   Q.  Did you find it?

6   A.  Yes.

7   Q.  You did find it?

8   A.  Yes. (Exhibit "A," pp.44-45)

19  Q.  Based on all of the information
20  we reviewed here today and the information
21  that you've reviewed in your files that we
22  still haven't seen, do you know how it
23  came about that Trans Union reported a
24  $2,951 judgment against Ms. Lawrence on
1   her credit report?

2   A.  Yes.

3   Q.  You do know?

4   A.  Yes.

5   Q.  How did it come about?

6   A.  Superior collects the information
7   and provides it to the credit companies.

8   Q.  Okay.

9   A.  So the credit companies would
10  then append it to the consumer credit
11  report based on the information that
12  Superior provides.
(Exhibit "A" pp.44-45, 165-166)(emphasis supplied)

Ms. Cerbus' testimony directly and effectively contravenes the foundation of plaintiff's Opposition to Trans Union's Motion for Summary Judgment, to the effect that Trans Union never identified "one single document or record to demonstrate the origin or existence of a judgment against Ms. Lawrence." (Opposition, p. 2, 4 and Sur-Reply, pp. 2-3.) Simply put, Superior, a reliable source of public record information, furnished Trans Union with information that there was a $2,951.00 judgment against plaintiff.

Plaintiff's Sur-Reply concedes: "the Superior Declarations indicate that Superior employs the highest standards and provides accurate information regarding public records to TU." (See Sur-Reply, p. 2)  Ms. Cerbus' testimony likewise debunks plaintiff's "surmise" that the "mistake" must have been that of Trans Union, "and not Superior's conduct." *Id*.  Plaintiff's unfounded contention amounts to nothing more than a "metaphysical doubt" that a "mistake" was made by Trans Union (as opposed to Superior) and that that mistake violated the FCRA. Accordingly, Trans Union respectfully submits that Trans Union is entitled to reconsideration, and particularly in connection with plaintiff's punitive damages and state common law claims.

### III. CONCLUSION

For all the above reasons and authorities, Trans Union respectfully requests this Court reconsider its December 11, 2003 Order denying summary judgment as to Plaintiff's punitive damages and state common law claims.

                Respectfully Submitted,

                SATZBERG, TRICHON,
                  KOGAN & WERTHEIMER, P.C.

                _____

                MARK E. KOGAN         (10186)
                BRUCE S. LUCKMAN      (38636)
                TIMOTHY P. CREECH     (81728)
                1818 Market St., 30th Floor
                Philadelphia, PA 19103
                (215) 575-7600; Fax: (215) 575-7688

                *Counsel for Defendant, Trans Union LLC*

DATED:   December 18, 2003