IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - - - - - - - - - - - -

GRACE LAWRENCE :
Plaintiff, :
vs. :
TRANS UNION, LLC :
CITY OF PHILADELPHIA :
Defendant. : C.A. NO:02-CV-4440

- - - - - - - - - - - - -

- - -
Friday, October 24, 2003
- - -

Oral deposition of NANCY CERBUS taken pursuant to notice, held at FRANCIS & MAILMAN, P.C., Land Title Building, 19th Floor, 100 South Broad Street, Suite 1902, Philadelphia, Pennsylvania, commencing at 10:46 a.m., before Nicolle J. D'Amico, Court Reporter - Notary Public there being present:

- - -

KAPLAN, LEAMAN AND WOLFE
Registered Professional Reporters
The Bourse, Suite 970
111 South Independence Mall East
Philadelphia, Pennsylvania 19106
(215) 922-7112

by e-mail.

Q. Okay. How often did you receive it back in 1996 by mail?

A. Monthly.

Q. So it was a monthly electronic tape with judgments that you put on your database?

A. Yes.

Q. Was that the same database as the Paradox database that you testified about earlier?

A. No.

Q. What database was that?

A. This is our Superior database.

Q. Does that still exist?

A. Yes.

Q. Do you still place judgment information that you receive from the City of Philadelphia on that Superior database?

A. Yes.

Q. Now you receive it by e-mail?

A. Yes.

Q. Are you able to conduct the searches on the database?

                                        A. Yes.
Q. Did you conduct a search for the original information in 1996?
A. Yes.
Q. Did you find it?
A. Yes.
Q. You did find it?
A. Yes.
Q. Did you turn it over to Mr. Luckman?
A. Yes.
Q. You did turn it over to Mr. Luckman. When was that?
A. Well, this is a search though.
Q. A search is a computer search?
A. Yes.
Q. So it's a result of an inquiry into your computer?
A. Yes.
Q. Could you print out the screen with the results?
A. Yes.
Q. Did you print out the screen?
A. Yes.

                                                      A. Yes.
Q. This was, you believe, one of the pages?
A. Yes.
Q. Could you interpret the judgment information on this page based on your experience as an employee of Superior?
A. I would say that from this information that you would see the plaintiff information, the defendant information and that there was a counter claim filed.
Q. Do you know who the defendant was in this case?
A. Based on this information?
Q. Based on the document in front of you, yes.
A. I would say that Grace Lawrence was the defendant.
Q. And her information is on the top right of this form?
A. Yes.
Q. And was a Thomas, it says here, Froneer or Frommer. He was the plaintiff?

                                                                      A. Yes.

Q. Directing your attention to the third entry or the third line of data under court activity.

A. Yes.

Q. Do you see that there are two bits of information underlined on the document that I'm showing you?

A. I do, yes.

Q. You see that says judge for DF, D-F?

A. Yes.

Q. 2951?

A. Yes.

Q. Do you interpret that to be a judgment for the defendant?

A. Yes.

Q. Next to it, the other item underlined is judgment for DF/CNT. What do you interpret that to mean?

A. Judgment for defendant/counter.

Q. On her counter claim?

MR. LUCKMAN: Objection.

BY MR. SOUMILAS:

Q. Do you interpret that to mean that it's a judgment on the defense counter claim?

A. Yes; however, the Hearing No. 2 which was on 7/31/96, there's a Hearing No. 1 on 7/31/96 that also says that it was withdrawn without prejudice.

Q. I'm sorry, could you show me where you're looking at on the form?

A. We're looking at Hearing No. 2.

Q. Yes.

A. Right above it it says, Hearing No. 1. The disposition is withdrawn without prejudice.

Q. Okay.

A. So I would interpret this as meaning that on this date, 7/31/96 something is unique about this case because it doesn't make sense, because it says that the case has been withdrawn and then also it says that there is a judgment for defendant.

Q. I understand that. Based on the training that you give to employees and

                                                              independent contractors, how would this type of information from the Philadelphia Municipal Court be coded as a judgment?

MR. LUCKMAN: Object to the form.

BY MR. SOUMILAS:

Q. Do you understand the question, ma'am?

A. I do hear your question. Now, what you'll need to remember is that when Nicholas goes to the court, he pulls the original copies, so he's not looking at this. This is what the people at the court -- they're terminal looks like.

Q. Okay.

A. So he wouldn't be looking at this sheet anyway.

Q. I understand that. So to answer my question, your employees typically would not be entering data into your system based on this sheet?

A. No.

Q. They would be looking at the court certified records to enter the data?

                                                              A. Yes.
Q. Have you seen the court certified records in this case?
A. Yes.
Q. And this is what Nick Palmer sent to you in July of 2003?
A. Yes.
Q. And to your knowledge -- I'm sorry, I think you've testified you still don't know what those records -- you don't recall, sitting here today, what those records say?
A. That's correct.
Q. And would you interpret this particular record to say that there is a judgment against Ms. Lawrence?
MR. LUCKMAN: Objection.
THE WITNESS: I don't think you can interpret that.

BY MR. SOUMILAS:
Q. But you said you were concerned that it says withdrawn without prejudice, correct?
A. Right.

                                                    Q. And you also saw that it's a judgment for the defendant?

A. That's correct.

Q. So would you agree with me that you cannot reasonably interpret this record to be a judgment against Ms. Lawrence?

MR. LUCKMAN: Objection to the form.

BY MR. SOUMILAS:

Q. I think you testified to that earlier, but if I'm mistaken, let me know.

A. Sorry, what is your question?

Q. Could you reasonably interpret this -- I understand your concern about its ambiguity, but regardless of how you interpret the ambiguity, could it possibly under any reasonable reading be a judgment against Ms. Lawrence?

MR. LUCKMAN: Object to the form.

BY MR. SOUMILAS:

Q. You can answer the question.

A. Could it be a judgment against

                                          Grace Lawrence?

Q. This document in front of you, yes.

A. Sure, it could be.

Q. It could be. Could you explain to me how you would interpret this document to mean that it's a judgment against Ms. Lawrence?

A. Because she's listed as a defendant and there is a dollar amount.

Q. Would you agree with me though that under Hearing 2 it says judgment for the defendant? You've already testified about that.

A. Right.

Q. And it also says next to that, judgment for defendant on what you've interpreted to be the counter claim and it's abbreviated CNT?

A. Right.

Q. If it's a judgment for the defendant on the counter claim, how could it be against her?

MR. LUCKMAN: Objection.

                                                        THE WITNESS: Because she's listed as the defendant still.

BY MR. SOUMILAS:

Q. So because she's listed as the defendant, you believe that the judgment could be against her?

A. No.

Q. Could you explain to me why you believe the judgement could be against her?

MR. LUCKMAN: Could you explain again?

MR. SOUMILAS: Yes, because I apparently haven't understood it yet.

THE WITNESS: You asked me -- why don't you ask me again.

BY MR. SOUMILAS:

Q. My question is, looking at this document, would you agree with me that you cannot reasonably conclude that this is a judgment against Ms. Lawrence?

MR. LUCKMAN: Object to the form.

THE WITNESS: If I look at

                                                           this document, I would, and our employees or contractors would probably state that there's something odd about this case. You cannot determine who the judgment is against or if the case is open or if it's been dismissed or withdrawn.

BY MR. SOUMILAS:

Q. Why is there something odd about the case?

A. Because one, there's a counter claim filed. Two, there's a Hearing 1, a Hearing 2 and then there's also an appeal.

Q. So you're saying that there's something unusual or odd, to use your word, about this case because there was a counter claim, number one, and number two, it's the procedural history that you just summarized, a first hearing, a second hearing and then an appeal?

A. Yes.

Q. So those things make it unusual?

A. Yes. And there's something else, Hearing No. 3, which I wouldn't even know what unusual something see transcription

or whatever.

Q. Okay. Is there anything else that in your opinion makes this case as it's summarized in this Municipal Court docket unusual or odd?

MR. LUCKMAN: Object to the form.

THE WITNESS: I'm sorry, what was your question?

BY MR. SOUMILAS:

Q. You've explained to me a couple of reasons why you think the disposition of this case is odd. I'm wondering whether there are any other reasons as you look at this document that would lead you to that conclusion that it's an odd or unusual case?

A. I would say yes, because it says that on the top that it's disposed and it doesn't really say anything where it was disposed or -- it's just very odd.

Q. I'm sorry, where are you looking at?

MR. LUCKMAN: The top line.

                                    THE WITNESS: The top line. It says disposed.

BY MR. SOUMILAS:

Q. It says, The case has been disposed?

A. Right.

Q. Okay.

A. And then if you look at the docket entries or the court activities as it's listed, it doesn't really look like it's closed other than the appeal that was filed.

Q. Okay. Any other reason?

A. Probably not.

Q. Now, I understand all of the reasons why you told me why you think the case is unusual or odd. My question nevertheless is, given all of those reasons, do you think it's reasonable for someone to conclude that this is a judgment against Ms. Lawrence?

MR. LUCKMAN: Object to the form.

THE WITNESS: I don't know