UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRACE LAWRENCE )<br>)<br>　　　　Plaintiff, )<br>   vs. )<br>)<br>TRANS UNION, LLC )<br>)<br>   and )<br>)<br>CITY OF PHILADELPHIA )<br>)<br>　　　　Defendants. )<br>) | Civil Action No. 02-CV-4440 |

**PLAINTIFF GRACE LAWRENCE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT TRANS UNION, LLC'S MOTION FOR RECONSIDERATION**

Plaintiff Grace Lawrence, through undersigned counsel, respectfully submits this Opposition to Defendant Trans Union, LLC's ("TU") Motion for Reconsideration of this Court's December 11, 2003 Memorandum and Order on Summary Judgment (the "Motion"). (A copy of the Court's Memorandum and Order of December 11, 2003, *Lawrence v. Trans Union, LLC*, 2003 WL 22992081 (E.D. Pa. 2003) is attached hereto as Exhibit A). For the reasons set forth below, TU's Motion should be denied.

I. **INTRODUCTION**

TU's Motion is much ado about nothing. Clinging to an innocuous footnote regarding the status of a third party subpoena served on Superior Information Services ("Superior"), TU asserts that the Court "overlooked . . . crucial information and testimony" (TU Memo. of Law at 2) from Superior's Nancy Cerbus in allowing punitive damages and Plaintiff's state law claims to proceed to trial. TU attempts to portray the Cerbus testimony as vital evidence that the Court

missed which should cause it reevaluate its ruling on punitive damages and Plaintiff's state law claims.

What TU neglects to mention to the Court is that on November 20, 2003, after TU had filed a motion to supplement the summary judgment record with the Cerbus testimony, to which Plaintiff responded, the Court granted TU's motion. (A copy of the Court's November 20, 2003 Order is attached hereto as Exhibit B.).

Further, the Lawrence Memorandum makes it very clear that the Court's ruling permitting Plaintiff's punitive damages and state law claims to proceed to trial was based upon the facts of record regarding *TU's* conduct, not Superior's, in failing to contact the Philadelphia Municipal Court Records Department, in merely parroting Superior's response to Plaintiff's disputes, by failing to independently verify the accuracy of the judgment it was reporting about the Plaintiff and by failing to forward the dispute documentation that Plaintiff had sent it.[1] Thus, even if the Court did not consider the Cerbus testimony in ruling on summary judgment, it is of no consequence; the testimony is immaterial to the findings that formed the basis for the Court's ruling. Finally, as pointed out by Plaintiff in her response to TU's motion to supplement the summary judgment record, the Cerbus testimony, if anything, actually strengthens the basis for Plaintiff's punitive damages claim.

At the end of the day, TU's Motion is nothing more than a reiteration of the same arguments it made at summary judgment regarding why it should be permitted to basically do nothing in response to a consumer's dispute, and which it has lost before this Court on multiple occasions, most recently in *Evantash v. GE Capital and Trans Union, LLC*, Civ. No. 02-1188, 2003 WL 22844198 (E.D. Pa. Nov. 25, 2003) (Judge Davis denying Trans Union's motion for

summary judgment seeking to dismiss punitive damages on the basis of Trans Union's policy of parroting the furnisher's response).[2]  *See also Crane v. Trans Union, LLC*, 282 F. Supp.2d 311, 321 (E.D. Pa. 2003); *Sheffer v. Experian*, 2003 WL 21710573 (E.D. Pa. July 24, 2003).  As a result, TU's Motion should be denied.

## II.   STANDARD FOR MOTION FOR RECONSIDERATION

The standards controlling a motion for reconsideration are set forth in Federal Rule of Civil Procedure 59(e) and Local Rule of Civil Procedure 7.1.  *Vaidya v. Xerox Corp.*, No. CIV.A97-547, 1997 WL 732464, at *1 (E.D. Pa. Nov. 25, 1997).  "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985); *see also Drake v. Steamfitters Local Union*, No. 420, No. CIV.A97-CV-585, 1998 WL 564886, at *3 (E.D. Pa. Sept. 3, 1998).

Here, there is no newly acquired evidence and the Court has not made any manifest errors of fact or law that would justify the granting of TU's Motion.

## III.   ARGUMENT

### A.   There Is No Newly Acquired Evidence

TU pins the entirety of its Motion on footnote 4 of the Court's Memorandum which concerns the status of the Cerbus deposition.  Regardless of what the footnote reads, however, TU moved to supplement the summary judgment record with the Cerbus testimony, and the Court granted TU's motion on November 20, 2003.  *See* Exhibit B.  There is nothing new about the Cerbus testimony.  Any reading of the footnote to the contrary is innocuous.

---

[1]   The very same attempt by TU to deflect liability by focusing on the conduct of one of its public records vendors was just rejected by the Eastern District of California in *Soghomonian v. The United States of America and Trans Union, LLC et al.*, 278 F. Supp. 2d 1151, 1157 n..3 (E.D. Ca. 2003).

**B.    The Lawrence Memorandum Makes It Clear That The Court's Decision Concerning Punitive Damages And Qualified Immunity Was Based Entirely On The Evidence Regarding TU's Conduct, Not Superior's**

Even if the Court did not consider the Cerbus testimony in reaching its ruling on punitive damages and qualified immunity, this is of no moment because the basis for the Court's ruling was the evidence of record regarding TU's conduct, not Superior's.

The Court found that TU is not entitled to summary judgment on the issue of punitive damages under the FCRA because the facts of record demonstrate that a reasonable jury could find that TU's practices of (1) not transmitting Plaintiff's dispute documentation on to the credit furnisher (i.e. Superior) and of (2) merely parroting credit information without independently verifying its accuracy willfully violate the FCRA.  *See Lawrence*, 2003 WL 22992081 at *5.  Because such conduct may be found to be willful, this Court also properly found that TU is not entitled to the FCRA's qualified immunity for state common law claims. *Id*. at *6.  This analysis clearly has nothing to do with the conduct of Superior, or any other third party.  It is based on TU's policies and practices as testified to by its corporate representative, Eileen Little.

In recounting the facts of record, the Court notes that: (1) "TU never contacted the Philadelphia Municipal Court Records Department"; (2) "TU's practice in addressing consumers' disputes over credit reports is to simply adopt the conclusion of Superior"; (3) "In fact, TU still has not independently verified the accuracy of the judgment reported against Lawrence." *Lawrence*, 2003 WL at *1 (*citing* Eileen Little Dep. at 69-70).  Thus, clearly what the Court was looking at in reaching its ruling was TU's lack of any action separate and apart from anything that Superior might have done.  This is the critical point that the *Cushman*,

---

2    *Evantash* was not available at the time of summary judgment briefing.  Accordingly, Plaintiff cites is as supplemental authority.

*Sheffer, Evantash* and *Crane* courts make, which TU either pretends to misunderstand or chooses to ignore.  The FCRA states clearly that a credit reporting agency cannot simply parrot the information it receives from a furnisher over a consumer's dispute.  The deposition testimony of Superior's Nancy Cerbus does not change Ms. Little's admissions or the facts of record outlining TU's practices.  Nor does it in any logical way affect this Court's analysis on the issues of punitive damages and qualified immunity.

Thus, contrary to TU's opening contention, Superior's reporting and reinvestigation was not crucial to the Court's ruling regarding TU's liability.  Indeed, this third party non credit reporting agency's conduct is irrelevant to TU's liability.  *See Soghomonian*, 278 F. Supp. 2d at 1157, FN.3 (finding that "there is no FCRA exception to the reinvestigation requirement that automatically excuses a credit reporting agency from liability simply because the agency relies on some other company to do the very thing the agency is required by law to do).

    **C. TU Misrepresents The Cerbus Testimony—The Testimony Actually Strengthens Plaintiff's Case Against TU**

Moreover, the Cerbus testimony does not even support TU's irrelevant contention that Superior had no use for Plaintiff's computer generated docket sheet from the Philadelphia Municipal Court showing that she did not, in fact, owe the judgment that TU (not Superior) was reporting on Plaintiff's credit report.  When read in context, Ms. Cerbus' testimony simply states that Superior's employees are supposed to consult "original copies" of judgment records prior to "*entering* the data" on Superior's computer system.  (Cerbus Dep. at 155-56, attached hereto as Exhibit C).  This testimony simply is not tantamount to TU's proposition that that Superior would have absolutely no use for a computer generated docket sheet, such as the one Plaintiff sent to TU along with her disputes, if it was forwarded to it by TU in the context of an investigation concerning the accuracy of the reporting of the judgment.

Rather, the Cerbus testimony merely reinforces the salient facts of record that Plaintiff has already pointed out—that TU had no reliable basis or documentation upon which to continue reporting a judgment against Plaintiff, that it merely parroted the information of its credit furnisher Superior in response to Plaintiff's multiple disputes, that it never even forwarded the court records Plaintiff provided it to the Superior, and that had it simply looked at the Philadelphia Municipal Court's *actual records*, it would have invariably concluded that Plaintiff never had a judgment against her.

As clearly documented by the certified records from the City of Philadelphia previously appended to Plaintiff's response memorandum, there is no doubt that Plaintiff ever had a judgment against her. *See* Certified Records from the City of Philadelphia, attached as Exhibit B to Plaintiff's summary judgment response memorandum. Indeed, TU does not contend that Ms. Lawrence ever owed a judgment against her.

Despite TU's suggestions otherwise, even Nancy Cerbus does not contend that the court records ever demonstrated a judgment against the Plaintiff:

> Q.   And would you interpret this particular record to say that there is a judgment against Ms. Lawrence?
>
> Mr. Luckman:   Objection.
>
> THE WITNESS:   I don't think you can interpret that.

(Cerbus dep. at 156, ll. 14-19)

> ***
>
> Q.   My question is, looking at this document, would you agree with me that you cannot reasonably conclude that this is a judgment against Ms. Lawrence?
>
> Mr. Luckman:   Object to the form.
>
> THE WITNESS:   If I look at this document, I would, and our employees or contractors would probably state that there's

6

> something odd about this case. *You cannot determine who the judgment is against or if the case is open or if it's been dismissed or withdrawn.*

(Cerbus dep. at 159, l. 24, 160, ll. 1-6.)

\*\*\*

> Q     ….My question nevertheless is, given all of these reasons, do you think it's reasonable for someone to conclude that this is a judgment against Ms. Lawrence?
>
> Mr. Luckman:     Object to the form.
>
> THE WITNESS:     I don't know if it's reasonable to conclude that.
>
> BY MR. SOUMILAS:
>
> Q.     Would you agree with me that nowhere on this [the city record] form does it say that it's a judgment for the plaintiff?
>
> Mr. Luckman:     Objection.
> THE WITNESS:     It doesn't say that it's a judgment for him, no.

(Cerbus dep. at 162, ll.17-24, 163, ll.1-9). Rather than aiding TU, the Cerbus testimony eradicates any question as to whether TU received a record from Superior that inaccurately suggested that Plaintiff had a judgment against her. The best that TU can contend is that Nancy Cerbus considers the court records to be somewhat ambiguous. Plaintiff respectfully asserts to the Court that the City's records speak for themselves, and that had TU actually contacted the City and obtained the records as it had misrepresented to the Plaintiff, or requested that Superior provide it with a copy of the actual records before continuing to report it, it would have quickly determined that the judgment was for Ms. Lawrence. (*See* Plaintiff's TU credit reports dated 11/12/97 and January 23, 1998 asserting that TU investigated Plaintiff's disputes that the judgment was "certified as complete and accurate" by the "Philadelphia County Reco[rds],"

attached as Exhibit C to Plaintiff's summary judgment response memorandum.). As pointed out in Plaintiff's briefing, TU did not do either of these things because as a matter of policy it simply parrots whatever information its credit furnisher reports in violation of the FCRA.

The Cerbus testimony also provides additional corroborative evidence supporting Plaintiff's claim that TU willfully violates the FCRA by failing to forward a consumer's dispute documentation to the credit furnisher reporting the information in violation of FCRA section 1681i(a)(2)(B) (requiring a consumer reporting to provide all relevant information to the credit furnisher). *See Crane*, 2003 WL 22172346, *7. In addition to the testimony of Ms. Little, Ms. Cerbus testified consistently:

> Q. …Based on your review of the all of the information that you've gathered…do you know whether during the dispute process Trans Union forwarded this form to you?
>
> A. No, they wouldn't have.

(Cerbus testimony at 163, ll.19-24).

Further, the Cerbus testimony is directed not to the City of Philadelphia's records, but to Superior's (not a consumer reporting agency regulated by the FCRA and not a defendant in this case) records. The questionable information that TU refers to comes from Superior's own records, not a "tape" from the City of Philadelphia as TU alleges. Ms. Cerbus' testimony makes clear that Superior recycled the original "tape," and that the tape no longer exists. (*See* Cerbus Dep. at 47, attached to TU's 10-29-03 Supplement).

Stretching logic and attempting to divert the Court from its non-delegable investigation duties under the FCRA, TU incorrectly asserts that because Ms. Cerbus testified that Superior's internal records supposedly indicated a judgment against Ms. Lawrence in 1996, TU is somehow free of liability in this case. No cogent reading of Ms. Cerbus' testimony, however, can lead to

that conclusion. Nor did Ms. Cerbus' testimony undermine Plaintiff's contention that after four years of disputes to TU (not Superior), and even after a year of litigating this matter, TU's representatives have *never* seen a single record demonstrating the origin or existence of a judgment against Ms. Lawrence.

Far from showing that TU employed procedures that assured "maximum possible accuracy" (*see* FCRA Section 1681e(b)) in its credit reporting, therefore, Ms. Cerbus' testimony simply reinforces the fact that TU failed to conduct any reasonable investigation in response to Plaintiff's disputes.

In sum, Ms. Cerbus' testimony only reinforces the fact that TU did not properly investigate Plaintiff's disputes, either during the period of four years when Ms. Lawrence was disputing the judgment directly with TU or the period of one year since this lawsuit was filed. Even if one were to assume that Ms. Cerbus' testimony is consistent with the records that her company purportedly has, this does not mean that TU conducted proper investigations under FCRA section 1681i. If information exists on Superior's database that a judgment was entered against Ms. Lawrence, that information was obviously wrong. Certified court records from the Municipal Court of Philadelphia have shown in this case that the judgment was actually in Ms. Lawrence's favor, and not against her. Any reasonable investigation should have revealed this obvious fact to TU at some point in between 1997 and 2001, when it continuously verified the judgment as accurately being reported against Ms. Lawrence.

This Court has made no manifest error of fact and thus TU's Motion for Reconsideration must be denied.

**D.     TU Distorts The FCRA and Precedent Within The Third Circuit On The Issues Of Willful Conduct And Punitive Damages**

Presumably in an attempt to convince this Court that it made a manifest error of law, TU makes several bald contentions concerning the bases on which this Court found that material issues of fact exist as to the willfulness of TU's conduct.  For instance, without any support to legal authority whatsoever, TU contends that the "FCRA does *no*t require documents to be forwarded in connection with reinvestigations."  (Emphasis in original).  (TU's Memo. of Law at 4).   TU also contends that the issue of "parroting" the information reported by the credit furnisher without conducting any independent investigation is "not germane."  (TU's Memo. of Law at 5).  TU is wrong on both fronts.

As a threshold matter, TU is simply wrong about the FCRA's requirements concerning the forwarding of documents onto credit furnishers, such as Superior.  The FCRA provides on it face that a consumer reporting agency, such as TU, must provide the credit furnisher "all relevant information regarding the dispute that is received by the agency from the consumer." 15 U.S.C. § 1681i(a)(2)(B).    The Eastern District of Pennsylvania in *Crane v. Trans Union, LLC* specifically held that forwarding "all relevant information" includes documents that a consumer sends to a consumer reporting agency in support of a dispute.  282 F. Supp.2d 311, 321  (E.D. Pa. 2003).  *Crane* further holds that TU's willful non-compliance with this requirement can support punitive damages.  *Id.*  Despite its contention to the contrary, TU knows that *Crane* is not alone.  In *Soghomonian*, *supra*, the Court noted that TU "did not even bother provide a copy of the [Plaintiff's dispute correspondence] to Hogan [TU's West Coast public records vendor as opposed to Superior] when it asked Hogan to investigate and verify."   *Soghomonian*, 278 F. Supp. 2d 1157, FN.3.  Thus, contrary to TU's contention, both the face of the FCRA and the only

10

case law on point support this Court's findings concerning the forwarding of documents to a credit furnisher.

Second, TU is simply mistaken about the issue of parroting. The Third Circuit has held that a consumer reporting agency's (TU's, in fact) "mere parroting" of the credit furnisher's reporting of information that is disputed by the consumer may violate the FCRA. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 224-25 (3d Cir. 1997). Since *Cushman*, several trial courts within the Third Circuit have made clear that a consumer reporting agency's parroting, when done as a matter of corporate policy, may support a finding of punitive damages. *See Crane v. Trans Union, LLC*, 282 F. Supp.2d 311, 321 (E.D. Pa. 2003) (consumer reporting agency that merely parrots information from a credit furnisher can be liable for punitive damages); *Evantash v. G.E. Capital Mortgage Servs., Inc.*, Civ. No. 02-1188, 2003 WL 22844198 (E.D. Pa. Nov. 25, 2003) (same); *Sheffer v. Experian Information Solutions, Inc*, Civ. No. 02-7407, 2003 WL 21710573 (E.D. Pa. July 24, 2003) (same). TU's point about Superior going to the courthouse is misplaced as the parroting claim is directed against it, not Superior. This Court's finding that TU's mere parroting may support a jury finding of punitive damages is well supported by very germane case law within the Third Circuit.

At the end of the day, TU reported a judgment against the Plaintiff, over her multiple disputes, without ever having seen any actual court record demonstrating that such judgment existed, and even after she provided it with a copy of a record she obtained from the Philadelphia Municipal Court. This Court has made no manifest error of law and thus TU's Motion for Reconsideration must be denied.

**IV.     CONCLUSION**

For the reasons stated above, as well as the reasons set forth in Plaintiff's Opposition to Defendant's Motion, Sur-Reply Brief and Supplemental Brief, which are incorporated by reference herein, Defendant Trans Union LLC's Motion for Reconsideration of this Court's summary judgment decision should be denied.

                                    Respectfully submitted,

                                    **FRANCIS & MAILMAN, P.C.**

                    BY:     _____
                                    JAMES A. FRANCIS, ESQUIRE
                                    MARK D. MAILMAN, ESQUIRE
                                    JOHN SOUMILAS, ESQUIRE
                                    Attorneys for Plaintiff
                                    Land Title Building, 19th Floor
                                    100 South Broad Street
                                    Philadelphia, PA 19110
                                    (215) 735-8600

Date: January 5, 2004